## BASILIKO *v.* STATE

[No. 50, October Term, 1956.]

*Decided  February  13, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ., and OPPENHEIMER, J., Associate Judge of the Supreme Bench of Baltimore City, specially assigned.

*Douglas N. Sharretts,* for appellant.

*Norman P. Ramsey, Deputy Attorney General,* and *Clayton A. Dietrich, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Alger Y. Barbee, State's Attorney for Montgomery County* and *Leonard T. Kardy, Deputy State's Attorney,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

Constas Gus Basiliko was convicted in the Circuit Court for Montgomery County of conspiracy to defraud the State of Maryland and certain named individuals constituting the State Roads Commission (usually referred to below, collectively, as the "State Roads Commission" or the "Commission"). He was sentenced to two years imprisonment and a fine of a thousand dollars. He appeals from the judgment and sentence. The questions presented on this appeal are whether or not his right to a fair trial was infringed by widespread newspaper, radio and television publicity during the course of the criminal trial growing out of the institution of a civil suit against him and others and out of its settlement by one of his co-defendants in the civil suit (but not in the criminal prosecution).

The appellant was one of five defendants indicted on four counts which, in brief and in substance, charged, respectively, these conspiracies: (1) to defraud the State and the State Roads Commission; (2) to obtain money from the State and the Commission by false pretenses; (3) to cheat and defraud the State and the Commission; and (4) fraudulently to affect, increase and inflate values of real estate which was in the proc-

ess of being acquired by the State Roads Commission, for future road improvement, to the end that the conspirators might thereby gain unlawful profits.[1] The trial began on March 5, 1956 and was concluded on March 15th. At the arraignment just before the commencement of the trial, the State confessed "not guilty" as to two of the defendants named as conspirators, and granted immunity to a third in order to obtain his testimony against the remaining defendants—Basiliko, the appellant, and one Offenberg, both of whom pleaded "not guilty" and elected a jury trial. Both were found guilty. Basiliko was sentenced as above stated and appealed; Offenberg was sentenced only to pay a fine and has not appealed.[2]

The gist of the State's case against Basiliko and Offenberg was that they had entered into a fraudulent conspiracy with one DuPre, a former employee of the Commission, to enhance the value of land which they knew (through DuPre) was to be acquired by the State Roads Commission, that they bought such land at a comparatively low price and by fake sales through strawmen sold it at a greatly inflated value to the Commission. DuPre was the defendant to whom immunity was granted. He had gone back to Mexico before the trial and returned to Maryland for the trial, at which he appeared as a witness for the State.

The case had attracted considerable publicity before the trial began, and it received newspaper, radio and television coverage while it was in progress. This included coverage by Washington, D. C., newspapers and radio and television stations having an extensive circulation or coverage in Montgomery County, which includes a large area and population in the Washington suburban area.

While the trial was in progress before Judges Anderson and Lawlor and a jury, the Honorable Stedman Prescott and Mrs. Prescott brought a suit in equity on March 8, 1956, against one Albert D. Misler, George Basiliko and Constas Gus Basiliko, the appellant in the present case. Very briefly stated, the

---

1. The State abandoned the 4th count on the last day of the trial.
2. Sentences were imposed only on the 2nd count.

bill of complaint alleged: that the plaintiffs had owned a tract of about 24 acres of land in a sub-division near Rockville known as the "Wheel of Fortune", that Constas Gus Basiliko had worked out a scheme with DuPre under which use was to be made of advance information available to DuPre as an official of the State Roads Commission relating to the relocation of the Washington National Pike (U. S. Route 240) and Basiliko was to buy up properties along the new route in order to sell them at prices in excess of their real value to the State Roads Commission, thereby unjustly enriching Basiliko and DuPre; that using such knowledge and acting through Basiliko's brother, George Basiliko, a Washington real estate man, and through straw parties, Constas Gus Basiliko and/or George Basiliko acquired the plaintiffs' 24 acres at a price of $600 an acre, which was alleged to be "a fraction of its then real value", title being held in the name of Misler, a straw man; and that the plaintiffs would not have sold their land at the price stated if they had been in possession of the information corruptly furnished to the Basilikos by DuPre. Some of these allegations were based upon personal knowledge; most of them were made on information and belief. This is by no means a complete summary of the allegations of the bill. Some of them are more fully stated in the newspaper articles mentioned below.

The bill prayed for a rescission of the sale and reconveyance of the land upon refund of the purchase price, interest, taxes, etc. (with proper adjustment on account of a loan secured by a deed of trust executed by Misler), and for temporary and permanent restraining orders against transfer of the property to others. A temporary restraining order signed by Judge Anderson was issued and was served on Constas Gus Basiliko, together with a subpoena to answer the bill, following the adjournment of court apparently on the afternoon of March 8th. (There appears to be some confusion of dates as between March 8th and 9th.)

At the time of Basiliko's trial, the Honorable Stedman Prescott (now a Judge of this Court) was the Chief Judge of the Sixth Judicial Circuit of Maryland. Montgomery County is a part of that Circuit and Judge Prescott usually sat at

Rockville, which is the county seat of Montgomery County. Just why this civil suit was brought during the pendency of the criminal trial is not directly stated in the record, but it appears from newspaper articles contained in the record that Judge Prescott wished to obtain the deposition of DuPre, who was in Maryland at the time of Basiliko's trial and would presumably return to Mexico at the conclusion thereof. It may have been thought that it would be desirable to proceed under Rule 1, and not practicable to proceed under Rule 2, of our former General Rules of Practice and Procedure, Part Two, I, Depositions (now included in Rules 401 and 402, respectively, of the Maryland Rules). Rule 1 permitted the taking of a deposition at any time after jurisdiction had been obtained over any defendant; Rule 2 permitted the taking of a deposition prior to a suit being commenced, but involved possible delay while notice by publication was being given to nonresident prospective defendants. Both George Basiliko and Misler were shown by the bill to be non-residents of Maryland. Constas Gus Basiliko was said to be a resident of Maryland.

It is evident from the record that Judge Prescott (and the Clerk of the Circuit Court, also) endeavored to avoid any publicity being given to the equity suit. These efforts were, however, not successful, and the suit received extensive publicity in three Washington newspapers, each of which had a large circulation in Montgomery County, and through radio and television broadcasts reaching the County.

The first newspaper article in the record was published in *The Washington Daily News* of Friday, March 9, 1956, from which we quote the following:

"JUDGE SAYS HE WAS GYPPED BY
MD. ROAD DEAL DEFENDANT
The 'Wheel of Fortune'
JUDGE SUES ROAD CASE DEFENDANT
Montgomery County Circuit Court Judge Stedman Prescott today has filed suit charging that Constas (Gus) Basiliko, one of the defendants in the Maryland Roads Commission conspiracy trial, gypped him

in a land sale involving 24 acres in the 'Wheel of Fortune' subdivision.

The Judge charged that Mr. Basiliko and others knew that the Roads Commission wanted the land for a clover leaf—which he said he didn't know — and bought it from him for a 'fraction' of its value as a road site.

Mr. Basiliko and Max Offenberg, both Washington businessmen, are on trial in another court in Rockville, on charges that they conspired to jack up prices on land sold to the state for highway building.

### WIFE SUES, TOO

Judge Prescott and his wife filed the suit as private citizens against Mr. Basiliko, his brother George, a Washington real estate dealer, and Albert D. Misler, of 1336 Missouri av nw.

The suit asked the Circuit Court to break the contract, to restrain the Basiliko group from selling the land if it has not already done so and to order any profits turned over to him if it has been sold.

Judge Prescott issued a subpoena ordering Mr. Basiliko to appear in Circuit Court to answer the suit. He didn't say what judge would handle the case.

### TO CALL DU PRE

The Judge also said he intends to call Ben DuPre, missing co-defendant in the roads conspiracy case, who turned up yesterday as a surprise prosecution witness, as a witness in his own case.

His suit charges that Mr. DuPre and Constas Basiliko 'corruptly agreed, planned and schemed to unjustly enrich themselves by buying properties at less than the real value thereof from persons who had no knowledge' of the highway route.

He said the sale price of the property near Rockville, was $600 an acre. The suit said the Judge believes that a transaction was recorded in the land office so as to make it appear the purchase price was different.

The suit said this was part of an alleged scheme 'to wrongfully acquire an excessive settlement from the State Roads Commission'.

## NEGOTIATIONS

The alleged fictitious price 'was to assist Ben Du-Pre in justifying the evaluations to be recommended by him in the negotiations' between the Roads Commission and the defendants, the suit said.

It said the Judge believes both of the Basilikos 'had full information concerning the wrongful information furnished by the said DuPre and full knowledge of the illegal plans and schemes.'

Circuit Court Clerk Clayton W. Watkins refused to let The News see the original copy of the suit filed with his office. When a reporter asked why, Mr. Watkins said: 'Just because you can't.'

Mr. DuPre's appearance at the roads trial yesterday threw the court room into high excitement.

He was fired from his Roads Commission job last July and reportedly went to his native Mexico before he was named in two Montgomery County indictments in November and one in Prince Georges County in December. Until he walked in the courtroom there had been no public knowledge that he had been contacted by state officials since then.

He testified that Mr. Basiliko had come to Mexico City to talk to him—November.

'I asked him how the roads case was coming along. He replied that everything was fine and there was nothing to fear as long as I remained in Mexico,' he said.

He testified he got the following payments from Mr. Basiliko for his part in getting premium prices from the SRC for land owned by Mr. Offenberg:"

Here followed a list of five transactions involving amounts ranging from $500 to $3,000 and aggregating $8,000.

*The Washington Post and Times Herald* and *The Evening Star,* of Washington, both carried articles on the same subject

on March 10, 1956. In an effort to avoid prolonging this opinion unnecessarily, we shall quote from them only briefly.

*The Post and Times Herald* stated in part:

"*Withheld the Facts, He Says*

### JUDGE PRESCOTT CHARGES FRAUD IN ROAD SITE DEAL

Montgomery County Circuit Court Judge Stedman Prescott, who sold property in Rockville's 'Wheel of Fortune' subdivision to two defendants in the Maryland roads fraud case, yesterday filed suit claiming the whole game was fixed.

The jurist charged that 'straw' agents for Constas and George Basiliko controlled the spin of the wheel by buying land from him while knowing the State Roads Commission wanted it for a clover leaf intersection.

Prescott said he didn't know that was part of the game.

He charged the agents bought a 24-acre tract along the right of way for the Washington National Pike from him for $600 an acre on Jan. 1, 1953. The judge claimed the price was a 'fraction' of its value as a roads site.

Also named as a participant in the game is Albert D. Misler of 1336 Missouri Ave., N. W.

Prescott said the Basiliko brothers set up the game through straw parties after getting 'wrongful' information from former State Roads Commission official Ben Du Pre on highway relocation plans.

* * * Du Pre testified at length this week on his role in tipping off the Basilikos on future road plans of the Commission in Montgomery County. Prescott said he will take a deposition from Du Pre about the land deal Thursday.

* * *

One week after he sold the tract, Prescott's suit alleged, Alexander transferred it to Misler. A deed in the second transaction bore $21.45 in transfer

stamps, according to the suit, indicated a sales price of $19,500.

Prescott said the stamps were used to build up 'a fictitious value' through which the defendants could 'wrongfully acquire an excessive settlement from the State Roads Commission.' * * *"

Another edition of the same paper for the same day carried the article with the headlines: "Judge Claims Land Swindle." *The Evening Star* article included the following:

"PRESCOTT SUES IN ROAD SCANDAL
SAYS HE SOLD LAND AT
FRACTION OF VALUE

Chief Judge Stedman Prescott of Montgomery County Circuit Court has alleged that he himself had been victimized by two men now under indictment on charges of conspiracy to defraud the State Roads Commission in the sale of highway rights-of-way.

Judge Prescott made the allegation in a civil suit to recover land he sold them three years ago. He filed the suit Thursday in Montgomery County Circuit Court at Rockville along with his wife as private citizens.

The suit names as defendants George and Constas (Gus) Basiliko, Washington area real estate men, and Albert D. Misler of 1336 Missouri avenue N. W.

FIGHTING EXTRADITION

Constas Basiliko and Max Offenberg are now on trial in Montgomery County Circuit Court on charges that they conspired to jack up prices on land sold to Maryland for highway building. George Basiliko has been indicted on a similar charge but his trial is pending because he is fighting extradition from the District of Columbia.

Judge Prescott — who is not hearing the current trial—charged that the three defendants purchased a 24-acre tract from him at a 'fraction' of its worth, knowing that the State Roads Commission wanted

the land for a cloverleaf for the new Washington National pike.

\* \* \*

The suit alleges that the defendants, through association with Ben Du Pre, former right-of-way engineer for the roads commission, learned that the State was going to need the Prescott tract for the pike, also known as relocated Route 240.

### CHARGES DETAILED

The suit also alleges that the defendants and Du Pre 'corruptly agreed, planned and schemed to unjustly enrich themselves by purchasing properties at less than their real value from persons who had no knowledge of the proposed relocation (of Route 240) and by disposing of said properties to the State Road Commission \* \* \* at prices in excess of the real value thereof.'

\* \* \*

In the conveyance to Misler, excessive tax stamps were placed on the deed, the suit alleges, in order to 'build a fictitious value' on the tract and 'wrongfully obtain excessive settlement with the State Roads Commission.'

\* \* \*

Judge Prescott said Du Pre has been ordered to give a deposition on Thursday. The defendants have until May 3 to answer the suit."

All of these articles appeared rather conspicuously in their respective papers.

The Associated Press put out a news item which went to its subscribers and was used in radio and television broadcasts from Washington. It began with the statement:

"The Chief Judge of the Montgomery County Circuit Court has filed suit against two men under indictment on charges of conspiracy to defraud the State Roads Commission."

In very brief form it then gave information along the same

lines as the newspaper articles. Basiliko's first motion, to which he made affidavit, states positively that the item was broadcast on Sunday, March 11, 1956, at 1 P. M. over Washington radio station WMAL, "having a large listening audience in Montgomery County," and alleges on information and belief that it was directed over other radio and television stations broadcasting into Montgomery County.

It should be noted that insofar as the above news items undertook to set forth the allegations in the Prescotts bill of complaint, they did so fairly. Each of the newspaper articles added a statement to the effect that Judge Prescott had said that he would take DuPre's deposition, the first article mentioned difficulty in seeing the original bill on file in the Clerk's office and every one of the articles, including the Associated Press dispatch, identified Constas Gus Basiliko as one of the defendants then on trial in the roads fraud case in the Circuit Court for Montgomery County.

On Tuesday, March 13, 1956, *The Washington Post and Times Herald* carried another prominent article announcing the settlement of the Prescott suit by Misler, and the article stated that "It was understood that the Basilikos did not participate in the settlement."

On Monday, March 12, 1956, when court reconvened after the week-end recess, each of the two defendants on trial in the criminal cases filed a motion for a mistrial based upon the publicity over the week-end which had been given to the Prescott suit. Attached to the motion were copies of the newspaper articles of March 9th and 10th to which we have referred and incorporated in it was the text of the Associated Press news item also mentioned above. The petition alleged, by paragraph 4, "That most, if not all, of the citizens of Montgomery County, Maryland, including the jurors now impanelled, have television and radio sets in their homes to which news is broadcast. That many of the jurors now impanelled are definitely known to be subscribers and readers of one or more of the aforementioned Washington, D. C., newspapers, and that one or more of such newspapers carrying the news items annexed hereto was delivered, pursuant to their subscriptions, to the homes of said jurors. That the said news-

papers were prominently displayed on news stands, on the public streets, and in places of business, such as drug stores, restaurants and other establishments where newspapers are commonly sold, all of said papers so displayed carrying the publications hereto annexed." Paragraphs 10 and 11 further state: "That because of the said wide-spread publicity and the fact that it is definitely known that one or more of the newspapers aforesaid was delivered to the homes of members of the jury impanelled, and that members of the jury impanelled have radios and televisions for the receipt of news broadcasts, the defendant believes that the news items herein mentioned did reach one or more of said jurors impanelled. For the reasons hereinabove assigned, the defendant states that the said publicity has prejudiced the jury against him, and that he verily believes that he is now unable to obtain a fair and impartial trial by the jury now impanelled because of the happening of the matters and things herein set out since the last adjournment of this Honorable Court."

No answer or demurrer to the motion was filed by the State, but the State's Attorney orally opposed the motion. After hearing argument the Court overruled the motion and stated in an oral opinion: "We feel that in the suit that was brought that there were no allegations in the suit that was brought that hadn't been brought out in the evidence that we have heard from the witness stand in this case. Not one scintilla of evidence, or rather, of fact, as set forth in the suit that was filed hasn't come from the witness stand; and, of course, the suit went into superficial [matters] you might say, in comparison to what the evidence we have heard testified to. Certainly, of course, the defendant Offenberg was not a party to the suit. It is true that the Defendant Basiliko was a party to the suit. It is a civil action."

There is no exact parallel to the present case among the prior decisions of this Court, but the general rules applicable thereto have been rather well defined in cases dealing with questions of removal based upon prejudice or with charges of contempt resulting from publications allegedly interfering with a fair trial.

A request for a mistrial is, of course, addressed to the dis-

cretion of the trial court; but the exercise of its discretion in such a case as the present, involving a question of prejudice infringing upon the right to a fair trial is reviewable on appeal to determine whether there has been an abuse of that discretion, and we do not understand the State to contest that proposition. See *Downs v. State,* 111 Md. 241, 73 A. 893, and *Piracci v. State,* 207 Md. 499, at 509, 115 A. 2d 262, at 266, and the cases cited in the latter case. On the authority of the *Piracci Case* we also hold that the failure of the State to reply or demur to the defendant's motion is not a reversible procedural error in this case. Here as there, "The State did not contest the fact that the publications had been made as represented, but argued that the situation did not call for the action requested." (See 207 Md., p. 510, 115 A. 2d, p. 266.)

That, in essence, is the State's contention in the present case. It urges that, as the trial court pointed out, the allegations in the civil suit added nothing to what had already been testified to in the criminal case, and that they were, in fact, superficial—i. e., mild—by comparison with the testimony in the criminal case. The State relies upon such cases as *Grammer v. State,* 203 Md. 200, 100 A. 2d 257, *Wanzer v. State,* 202 Md. 601, 97 A. 2d 914, *Baltimore Radio Show, Inc. v. State,* 193 Md. 300, 67 A. 2d 497, *Newton v. State,* 147 Md. 71, 127 A. 123, in support of its contention that the publicity here involved was not such as to preclude a fair trial or to infringe the defendant's right to such a trial. The State also relies upon the observation of Mr. Justice Holmes in *Holt v. U. S.,* 218 U. S. 245, in which a talesman had read a newspaper article relating to the case, but stated that "he would decide according to the evidence or lack of evidence at the trial," that "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day." (218 U. S., at 251.)

The State also relies upon *Stroble v. California,* 343 U. S. 181, in which highly damaging statements, including a confession, had received great newspaper publicity about six weeks before the trial of the accused for murder, yet it was held by two California courts, and the Supreme Court accepted

their finding, that the defendant had failed to establish prejudice; and his conviction was affirmed. Publicity during the trial was not great, and the defendant made little objection to it. That case differs from the instant case in that nearly all of the publicity objected to occurred some time before the trial. The interval allowed for a cooling off period and also allowed an opportunity to examine prospective jurors on their *voir dire*. They were so examined to such extent as defense counsel desired, and there was no request for a change of venue, as the Supreme Court noted.

In *Newton v. State, supra,* which was also a conspiracy case, great stress was laid by this Court (a) upon the express denial made by every juror, before he was sworn, that he would be influenced in rendering his verdict as to the defendant Newton by the fact that three judges of the Supreme Bench of Baltimore City had found the defendant's alleged fellow conspirators guilty and (b) upon the affirmative statement of each juror that he would base his verdict solely upon the law and evidence, uninfluenced by the action of the three judges in the case of the other alleged conspirators. This aspect of the *Newton Case* was commented upon in *Baltimore Radio Show, Inc. v. State, supra* (193 Md. at 329) ; and the protection afforded by the opportunity to examine prospective jurors on their *voir dire* was pointed out in *Grammer v. State, supra* (203 Md. at 212). In the instant case, no opportunity for such examination was available; the jury was impanelled and the trial was well under way before the civil suit and its attendant publicity developed. As we point out more fully below, no real equivalent of examination on the *voir dire* is available in the midst of a trial.

In *U. S. v. Carruthers,* 152 F. 2d 512, the Court of Appeals for the Seventh Circuit affirmed a conviction for mail fraud, notwithstanding the fact that when the jury was polled after reaching its verdict, one juror was found to have read an inflammatory newspaper article, prejudicial to the defendant, which was published during a week-end recess. The juror stated that he recalled no more of the article than that it dealt with the denial of a defense motion. He did not apparently recall a statement in the article that the defendant had served

a prison term for highway robbery. The Court of Appeals said that the "publication could, under some circumstances, have brought to naught a long, tedious and expensive trial. Whether the Court should have in this instance declared a mistrial depends upon all the circumstances. A motion of this sort is addressed to the sound discretion of the trial Court."

While that is also true here, as we have already pointed out, the exercise of that discretion is reviewable, and it is to be reviewed in the light of the circumstances of this particular case. It is quite evident that Judge Prescott recognized and tried to avoid the harmful possibilities to the defendant of publicity which might grow out of the equity suit by preventing its becoming a matter of public knowledge. Though his right to sue may be conceded, and it has been expressly conceded both by Basiliko's trial counsel and by his counsel on this appeal, the unfortunate facts remain that the suit did become a matter of public knowledge and that it did receive wide publicity in the locality where Basiliko was on trial.

It is true that it was not shown that any individual juror had actually read or heard any of the news articles or broadcasts about the equity suit. It would have been impossible for defense counsel to have questioned the jurors about this matter in the midst of the trial without bringing it home to them in a most forceful way and in a way most damaging to his client. Nor could the trial court have examined the jurors on the subject during trial without producing much the same effect. Even a specific instruction to the jury to disregard any newspaper reports or broadcasts pertaining to the civil suit would have run the risk of emphasizing such reports, which possibly accounts for the rather guarded form of instruction to disregard newspaper articles "about this case", which was given just before adjournment on March 8th, which appears to have been the day the equity suit was actually filed and the day before it was reported in a newspaper.

Although it was and is quite clear that the Prescotts sued as private citizens, it is also clear that the publicity attendant on their suit all referred to his official position as a Judge or as the Chief Judge of the Circuit Court. It is also clear that the equity suit charged Constas Gus Basiliko, and to a large

extent his brother, with substantially the same things that were charged against Constas Gus Basiliko in the criminal case in which he was then being tried in the same court. Though, of course, Judge Prescott was not sitting in the criminal case and his civil case would have had to come before some other Judge, and those facts were plainly apparent from at least the longer newspaper articles, we cannot divest ourselves of the firm belief that the effect of the publicity relating to the equity suit would have been strongly and definitely prejudicial to the defendant Constas Gus Basiliko in the mind of any juror serving in Basiliko's criminal trial who either read any of the newspaper articles or listened to any of the broadcasts. They identified the Basiliko on trial in the criminal case as one of the Basilikos named in the civil case; and the civil suit, both as filed and as truthfully reported, could have left no doubt in anyone's mind that the well known, highly respected, competent and experienced judicial officer who was one of the plaintiffs in the civil suit believed Basiliko guilty of conduct of the very kind with which he was charged in the criminal case. It amounted almost to a finding by him on the very questions on which the jury would have to pass in determining whether Basiliko was guilty.

The facts alleged in the appellant's motion for a mistrial with regard to newspaper and broadcast coverage of Montgomery County and with regard to "many" of the jurors being known to be subscribers to and readers of one or more of the newspapers mentioned and with regard to their ownership of radio or television sets, are such as to create a strong inference that at least some of them did in fact read one or more of the articles or hear one or more of the broadcasts about the equity suit. The State does not directly controvert these allegations, but says that they are not proven. They are not proven up to the hilt, but the inference of their truth is, we think, too reasonable and too strong to be disregarded in this case. Cf. *Lee v. State,* 161 Md. 430, 157 A. 723, and *Jones v. State,* 185 Md. 481, 45 A. 2d 350, in which reference was made to the "undenied allegations of fact in the petition of the accused for a change of venue" from which "there was the appearance of the kind of danger of which Chief Judge Bond

warned in his opinion in the Lee case, * * *" and it was held "that the Circuit Court for Dorchester County abused its discretion when it sent the case to the Circuit Court for Wicomico County for trial." (185 Md. at 487, 45 A. 2d at 352-3.)

In the present case we think that it would be requiring too much to insist that actual knowledge of the newspaper articles or broadcasts and actual prejudice in the mind of some one or more jurors resulting therefrom should be shown. The only way in which the latter could have been proven without risking disastrous consequences to the defendant, would have been by polling the jury after the verdict had been rendered— that is, by asking a juror to declare that he had read or heard and had acted upon something other than the evidence adduced at the trial.

We are of the opinion that the trial court should have granted the defendant Basiliko's motion for a mistrial based upon the publications relating to the bringing of the civil suit. The situation which arose here in the midst of trial is comparable to that considered in *Delaney v. U. S.,* 199 F. 2d 107 (C. A., 1st Cir.), where because of publicity fanning prejudice against the defendant in a criminal case, it was held that a motion for the postponement of a case should have been granted to permit a cooling off period. In this view we find it unnecessary to consider the ruling on the second motion of the sort based upon the announcement of the settlement of the equity case by a defendant other than Constas Gus Basiliko.

The judgment is accordingly reversed and the case is remanded for a new trial, the costs to abide the event.

> *Judgment reversed and case remanded for a new trial; the costs to abide the outcome.*