KEVIN JOSEPH BARBER *v.* STATE OF MARYLAND

[No. 92, September Term, 1972.]

*Decided October 24, 1972.*

236

The cause was argued before ORTH, THOMPSON and CARTER, JJ.

*Francis X. Gaegler, Jr.,* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Warren F. Sengstack, State's Attorney for Calvert County, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Raymond F. Ciarrocchi, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Kevin Joseph Barber and others were jointly indicted by the Grand Jurors of Prince George's County, for crimes which occurred during his alleged participation in the armed robbery of a small liquor store. The case against Barber was severed, removed and tried by a jury

in the Circuit Court for Calvert County, Judge Perry G. Bowen presiding. The foreman of the jury announced the verdict "guilty of armed robbery with a dangerous weapon, and guilty of first degree murder with a request for clemency." For the homicide Barber was sentenced to serve the rest of his natural life, and for the other conviction, 20 years to run concurrently with the life sentence. Barber appeals alleging the trial judge committed reversible error by denying his motion for mistrial due to newspaper publicity which appeared during trial, in that the judge failed to examine the newspaper articles as to whether or not they were "prejudicial or inflammatory per se." Secondly, he alleges error was committed by the failure "to examine the jurors individually rather than *en mass* in respect" to their knowledge of the newspaper articles. Lastly, he alleges that the jurors' finding of "guilty of armed robbery with a dangerous weapon," makes this conviction a nullity as he was not indicted for armed robbery but rather "attempted robbery with a deadly weapon."

The evidence presented by the prosecution was uncontroverted. Appellant was identified by Mrs. Ethel Kidwell as the one of the "boys" who entered the package liquor store operated by her and her husband and drew a pistol while announcing "this is a holdup." In an ensuing gun battle the would-be robbers shot and killed Warner Giles Kidwell, but fled without taking anything.

### Publicity

The second morning of the two-day trial, appellant's counsel moved for a mistrial based on two newspaper articles that had appeared "in the metropolitan Washington newspapers" the previous day. The actual articles are not in the record apparently because they have been lost. It has been stipulated that defense counsel's summary of the articles to the trial court was a fair statement of their context. On appeal counsel referred to three pretrial newspaper stories, but under the rules only what he presented to the trial judge is before us. One front

page article was entitled "Probation for a Youth in Robbery Stirs Debate"; it reported the disposition of the case against one of those jointly indicted with appellant. The article indicated that there were co-defendants involved, but it does not appear from the record that appellant was mentioned by name. An evening newspaper carried an article entitled "Youth Given Probation in Fatal P. G. Robbery." This article reported about the crimes and the disposition of the cases against two of the defendants. The article was apparently embellished with some comments by the State's Attorney for Prince George's County on the propriety of the probationary sentencing in view of the seriousness of the offenses. Appellant's counsel alleged this article mentioned that "two other eighteen year olds who are charged with the actual attempted holdup and shooting are scheduled to go on trial today in Calvert County." Relating the facts of one article, appellant's counsel asserted "that article went on to say . . . Kevin Joseph Barber, has a murder charge pending against him, and is scheduled to be tried Monday in Calvert County. Then it goes on with a further lengthy explanation, also involving the State's Attorney for Prince George's County, on whether or not the sentence [of a co-defendant] was proper in view of the seriousness of the offense. . . ."

Prior to allowing the jury to separate for luncheon recess the first day of the trial, the judge admonished them to neither engage in nor overhear conversations concerning the case. At the end of the first day and prior to their evening separation, this admonition was reiterated and supplemented with a direction not to "read any possible account of the trial today in any newspapers or any other form of printed material, nor are you to listen to anything over the radio about it. Any time you hear anything that leads you to believe that it might be connected with this case, have nothing to do with it." Court was then adjourned for the day. The first order of business the next morning was appellant's motion for mistrial.

The trial judge posed to the jury as a body this question: "Mr. Foreman, ladies and gentlemen of the jury, before this case commenced yesterday, you ladies and gentlemen were sworn on the voir dire. I want to ask you now, on the basis of that oath, and I want you to answer me frankly and honestly without any worry of reprisals, whether any of you ladies and gentlemen read any newspaper articles reported about this case, or heard any reports or comments about this case over last night's recess." Immediately afterward the court reporter has inserted "(The jury indicated a negative response.)" The trial judge then denied the motion for mistrial.

The general rule concerning prejudicial publicity as stated by the Court of Appeals of Maryland is "the burden is upon the party alleging prejudice to show: (1) that the newspaper article is prejudicial (2) that a juror has read the prejudicial newspaper article, and (3) that the jurors' decision at the trial was influenced by that newspaper article." *Presley v. State,* 224 Md. 550, 555, 168 A. 2d 510, cert. den. 368 U. S. 957, 82 S. Ct. 399, 7 L.Ed.2d 389. See also *Graef v. State,* 1 Md. App. 161, 228 A. 2d 480 and *Sizemore v. State,* 5 Md. App. 507, 248 A. 2d 417. If we assume the articles were prejudicial it is obvious the appellant failed to satisfy requirements (2) and (3) and the trial judge committed no error in denying the motion for mistrial.

Appellant argues the trial judge was required under *Basiliko v. State,* 212 Md. 248, 129 A. 2d 375, to read the articles and determine whether or not the articles were prejudicial *per se.* Appellant misreads *Basiliko.* The convictions in that case were reversed because during a criminal trial, the publishing and broadcasting media gave massive coverage to a civil suit brought by the well-known Chief Judge of the same circuit in which the criminal trial was being held; the civil suit was based upon the assumption of the truth of the allegations which constituted the ultimate issue in the criminal trial. In *Basiliko* there was no showing that any juror had been exposed to those announcements; however, based upon

its peculiar facts, the Court inferred that the jurors had been exposed.

Appellant also makes reference to *Sheppard v. Maxwell,* 384 U. S. 333, 86 S. Ct. 1507, 16 L.Ed.2d 600, to support his argument. In that case where the publicity was so "massive, pervasive and prejudicial" that it "inflamed and prejudiced the public," the Supreme Court presumed jury prejudice and reversed a criminal conviction. The publicity in these two cases bears no resemblance to the publicity shown by the two articles involved in the instant case. Nor would the publicity be in any way comparable if we were to consider the other articles referred to above but not officially before us. In order for the precedents of *Basiliko* and *Sheppard* to be invoked, the publicity must be so massive that it permeates the entire community. If two newspaper articles published during the course of a criminal trial could result in presumed jury prejudice, few jury trials could be completed. Appellant has cited no authority nor are we aware of any which requires that a trial judge make a finding as to whether or not publications relating to a criminal trial "were inflammatory and prejudicial per se." His denial of the motion for mistrial in the instant case amounted to a finding that no jury prejudice had been shown and we agree with his finding. See *Raimondi v. State,* 12 Md. App. 322, 278 A. 2d 664 (cert. granted on other grounds 265 Md. 229, 288 A. 2d 882).

### Examination of Jurors

Appellant's trial counsel made a timely general objection "to any questions being asked by the court," but on appeal he claims only that the trial court abused its discretion by posing the question to the jury as a whole rather than individually. Appellant urges, as he did at trial, that human behavior be taken into consideration, and concludes that in light of the admonition not to read newspapers that the tendency of the jurors would be to deny they had read the articles.

To support his argument appellant cites *Seidman v.*

*State,* 230 Md. 305, 187 A. 2d 109 and *Veney v. Warden,* 251 Md. 159, 246 A. 2d 608, but we fail to see such support. In the first case the trial judge questioned jurors on *voir dire* as a group, in the second they were questioned individually. We see nothing in either opinion which would indicate that either method is improper. See *Connor v. State,* 225 Md. 543, 171 A. 2d 699, which specifically approved questioning jurors as a group. While we recognize the difference between questioning jurors prior to the time they are sworn and questioning them during a trial, *Basiliko v. State, supra,* we see no prejudice to the appellant in the instant case due to the cautious manner in which the trial judge handled the situation.

### Verdict

When the jury declared that they had reached their verdict and had appointed their foreman to speak for them, the clerk asked "What say you, is Kevin Joseph Barber guilty of the matter for which he stands indicted, or not guilty?" The transcript shows the foreman replied in part with the following redundancy, "Guilty of armed robbery with a dangerous weapon, . . . ." The clerk compounded the error when he said, "Ladies and gentlemen of the jury, harken to your verdict as the Court has recorded, that you find Kevin Joseph Barber . . . guilty of armed robbery." No response from the jury is transcribed but the court immediately thanked the jury and dismissed them. No objection to the form of the verdict was raised below.

It is elementary that a judgment based on a jury's verdict of guilty of a crime for which the prisoner was never accused is invalid. *Turner v. State,* 242 Md. 408, 219 A. 2d 39. We think it clear from the record in this case that the jury intended no such verdict. See *Pettiford v. State,* 8 Md. App. 560, 569, 261 A. 2d 216.

Of the four counts of the indictment against appellant, only the second pertains to robbery; it reads in part "[appellant] unlawfully did attempt with a dangerous

and deadly weapon to rob Ethel Sarah Kidwell . . . and violently did attempt to steal from her . . ." This charge, as well as the others, was read in its entirety to the jurors. In his opening argument the State's Attorney advised "Ladies and gentlemen of the jury, the case that you have before you today is a murder, attempted armed robbery case." In his charge to the jury, the trial court stated, "Now, the second count which will be submitted to you charges the offense of attempted robbery with a deadly weapon . . . the crime charged . . . is not to complete the robbery, but to attempt to rob." All of the testimony showed the robbery was not accomplished and there is no reference to an actual or completed robbery anywhere in the record except, of course, in the verdict.

When viewed in the light of these circumstances, as required by *Pettiford, supra,* it is clear that the redundancy was unintentional and that the substitution of the word "armed" for "attempted" was inadvertent. The error committed was one of form only and "where the meaning of the verdict is so unmistakable, mere inartificiality in its form will not be sufficient to defeat justice by a nullification of a verdict which plainly declared the intent of the jury. . . ." *Simmons v. State,* 165 Md. 155, 169, 167 A. 60. The very purpose of language is to express ideas; when the language used unmistakably expresses a conclusion, technicalities in the form of the verdict cannot be used to invalidate that verdict. The docket entry as recorded correctly reflects the jury's verdict, "On 2nd. Count Defendant Barber GUILTY of attempted robbery with a deadly weapon."

*Judgments affirmed.*