486 A.2d 789

**Harold Lee HOUNSHELL aka Harold Lee Houndshell**

v.

**STATE of Maryland.**

**No. 528, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Jan. 14, 1985.

Kathleen M. Brown, Assigned Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Valerie Johnston Smith, Assistant Attorney General, Baltimore (Stephen H. Sachs, Atty. Gen. of Maryland, Kurt L. Schmoke, State's Atty. for Baltimore City and Michael Flannery, Asst. State's Atty., for Baltimore City, Baltimore, on brief), for appellee.

Argued before WILNER, BLOOM and GETTY, JJ.

GETTY, Judge.

Appellant Harold Lee Hounshell was tried before a jury in the Circuit Court for Baltimore City (Watts, J.) and convicted of first degree premeditated murder. He was sentenced to life imprisonment without the possibility of parole pursuant to Maryland's Enhanced Penalty Statute, Md.Ann.Code art. 27 § 643B. By this appeal, appellant raises the following five issues:

I Did the State fail to prove every necessary element of first degree murder?

II Did the trial court err in giving the jury the State's requested instructions on the nature of strangulation?

III Did the trial court abuse its discretion by denying appellant's request to have the jury sequestered in order to prevent exposure to prejudicial publicity?

IV Should the evidence seized from appellant's car have been suppressed as the search was conducted pursuant to an invalid search warrant?

V Was the evidence produced at trial legally insufficient to establish appellant's criminal agency in the offense with which he was charged?

### Facts

On Sunday, July 25, 1982, shortly before 4:00 P.M., a body of a young woman, later identified as Laverne Duffy, was found in a wooded, debris-filled area of Druid Hill Park in Baltimore City. The body was nude except for shoes, watch and a ring. An autopsy report revealed that the victim had been strangled to death. The report also indicated the presence of semen in Laverne Duffy's mouth.

On July 28, 1982, appellant, who was under investigation for the homicide of Laverne Duffy, was observed in his automobile at the parking lot of the Sunpapers in downtown Baltimore. Appellant's car was stopped by two Baltimore City police officers who made a preliminary search of the vehicle for weapons. Appellant was arrested for various traffic offenses and his car was impounded by the Baltimore City Police Department. While appellant's automobile was in police custody, Detective James Ozazewski, the primary investigator in the Duffy murder case, prepared an affidavit for a search warrant for the vehicle. The affidavit contained five witness statements, two of which were taken by Ozazewski personally and three of which were taken by other police officers. The affidavit failed to mention the fact of the initial search of the vehicle for weapons which took place on July 28, 1982. Information about appellant's background was included in the affidavit, including appellant's psychiatric record, his acquittal by reason of insanity of two other sex-related offenses, and his connection with the murder investigations of two other women. The background information contained in the affidavit, however, did not include the dates of the various events with which appellant was connected.

A search warrant was issued for appellant's automobile on July 29, 1982. During the search, police uncovered a flowered strapless sundress of a type known to have been last worn by the victim. Also recovered from appellant's automobile were soil and glass samples, blood, hair and fibers. The soil and glass samples recovered from appellant's automobile matched samples taken from the area where the victim's body was recovered. On March 21, 22 and 28, and April 5, 1983, a hearing was held on appellant's motion to suppress the evidence obtained through the search of appellant's automobile. On April 5, the motion to suppress evidence was denied. A trial on the merits was held in the Circuit Court for Baltimore City in April and May of 1983.

At the trial, Lorenzo Lee, the victim's boyfriend and roommate, testified that on the night she died, July 24–25, the victim had been wearing a flowered sundress. Lee identified the dress found in appellant's car as the dress last worn by the victim. Another witness, Ramona Enos, testified that she had seen the deceased in a diner on a Saturday night, but could not remember the date. The deceased was murdered on a Saturday night or early Sunday morning. Enos identified the dress found in appellant's car as the dress the deceased was wearing when Enos saw her, but testified that when she saw the deceased the dress had straps. Enos further testified that appellant was in the diner on the same night as the deceased. Two other witnesses testified that they saw the deceased on the night she died and that she was wearing the dress that was found in appellant's automobile. One of those witnesses testified that the dress had straps but that the deceased wore the dress with the straps tucked away.

Another witness, Tanya Fisher, testified that at approximately 4:00 A.M. on July 25, she saw the deceased talking to appellant and later getting into his automobile. Joyce Young, who was with Fisher that night, corroborated Fisher's testimony and identified appellant as the person seen with Laverne Duffy on the last night of her life. Young

testified that appellant was the only occupant of the vehicle Laverne Duffy entered that night. Young testified that she was familiar with appellant's vehicle because she, Young, had been in the same vehicle on other occasions. Previously, however, Young had refused to cooperate with police and had stated that she was home all day on July 25. Young was unable to identify the dress the deceased was wearing on July 25.

Marvin Mullen, the laboratory technician who supervised the search of appellant's automobile, testified that the victim's dress was found under the spare tire in the rear compartment of appellant's automobile. Robert Hursley, a forensic scientist, testified that soil and glass samples taken from appellant's automobile matched samples taken from the area where Laverne Duffy's body was found.

Lawrence Watson, appellant's neighbor, testified, and another neighbor corroborated, that appellant attended a party given by Watson on July 25, but left the party at 3:00 or 4:00 A.M. Appellant did not testify.

The trial was concluded on May 20, 1983, when a jury found appellant not guilty of first degree felony murder but guilty of first degree premeditated murder. Appellant was sentenced to life imprisonment without possibility of parole. This appeal follows.

## I

Appellant asserts that his conviction for first degree murder must be reversed because the evidence presented at trial failed to establish the necessary elements of a wilful, deliberate and premeditated murder. We disagree.

First degree murder is the actual intent coupled with the fully-formed malicious purpose to kill, with enough time for deliberation and premeditation to lapse so as to convince a fact finder that the slaying was not the offshoot of some intemperate conduct, rashness, or temper, but an act done under the direction of a mind that is fully conscious of its own design. *Hyde v. State*, 228 Md. 209, 179

A.2d 421 (1962), *cert. denied,* 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); R. Gilbert & C. Moyland, *Maryland Criminal Law: Practice and Procedure,* § 1.4–1 (1983). For a killing to be "wilful" there must be a specific purpose and intent to kill, to be "deliberate" there must be a full and conscious knowledge of the purpose to kill, and to be "premeditated" the design to kill must have preceded the killing by an appreciable length of time, that is, time enough to be deliberate. *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980).

Appellant argues that the circumstances surrounding the murder of Laverne Duffy provide no basis for the conclusion that the murder was committed with premeditation. Appellant takes issue with the State's failure to introduce any evidence, medical or otherwise, of the nature and duration of the act which caused the death of Laverne Duffy. Specifically, appellant argues that a jury could not find appellant guilty of first degree premeditated murder without some evidence of the amount of time and type of force which appellant must have utilized to strangle Laverne Duffy to death. We reject appellant's argument.

■ Admittedly, death by strangulation does not in and of itself establish first degree murder. *Webster's New World Dictionary* defines "strangle" as: "to kill by squeezing the throat so as to shut off the breath, as with the hands, a noose, etc.; throttle; choke. To suffocate or choke in any manner." A jury, therefore, may consider that some time element is necessarily involved between the onset of squeezing the throat and death resulting therefrom. This is particularly true where, as in this case, the autopsy report does not reflect that death resulted from a fracture or sudden blow to the throat. Whether the time required to produce death by strangulation is sufficient for the assailant to reflect upon his actions before death ensues is a matter for the jury to determine.

■ We see no merit to appellant's contention that evidence of the amount of time required for strangulation to

cause death must be presented to establish premeditation in a strangulation murder case. Appellant misconstrues what is required for premeditation to exist and underestimates what is common knowledge about strangulation.

■ Premeditation is a term of art used in the law of homicide. It is commonly defined as the design which must have preceded a killing by an appreciable length of time to make that killing deliberate. *See Chisley v. State,* 202 Md. 87, 106–07, 95 A.2d 577 (1953). When there is deliberation, there has been of necessity time for deliberation, to-wit, premeditation. *Smith v. State,* 41 Md.App. 277, 308, 398 A.2d 426 (1979). In *Chisley v. State, supra,* the Court of Appeals defined the time element required for a finding of premeditation as follows:

"[t]he time need not be long. It must be sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill. And when the time is sufficient for this, it matters not how brief it is." 202 Md. at 107, 95 A.2d 577 *quoting People v. Majone,* 91 N.Y. 211, 212 (1883).

In his excellent discussion of the meaning of premeditation in *Smith v. State, supra,* Judge Moylan noted that "the period of time required for premeditation and deliberation in first degree murder is only that which is necessary for one thought to follow another." *Id.* at 317, 398 A.2d 426 (*quoting Bradney v. People,* 162 Colo. 403, 426 P.2d 765 (1967). "For a killing to be premeditated, there 'need be no appreciable space of time between the intention to kill and the act of killing—they may be as instantaneous as successive thoughts of the mind.'" *Smith v. State, supra,* at 317, 398 A.2d 426 (*quoting Carey v. State,* 91 Idaho 706, 429 P.2d 836 (1967)). Judge Moylan gives the following examples of evidence that was found to be legally sufficient to support deliberation and premeditation in "questionable" circumstances:

"*Houston v. State,* 225 Md. 403, 171 A.2d 233 (1961) (a street fight where the defendant only turned upon the victim at the moment when the victim attempted to dissuade him from killing another); *Cook v. State,* 225 Md. 603, 171 A.2d 460 (1961) (an unexplained killing following a drunken quarrel); *Taylor v. State,* 226 Md. 561, 174 A.2d 573 (1961) (a drunken quarrel with the time interval being represented by the time necessary to walk across the room, pick up a gun, raise it and fire it); *Detoro v. State,* 227 Md. 551, 177 A.2d 847 (1962) (a drunken and jealous quarrel with the time for premeditation being represented by a walk to the kitchen to pick up a knife and the use of it a minute or two later); *Martin v. State,* 228 Md. 311, 179 A.2d 865 (1962) (a drunken and jealous quarrel); *Leyva v. State,* 2 Md.App. 120, 123, 233 A.2d 498 (1967); *Dubs v. State* 2 Md.App. 524, 538–39, 235 A.2d 764 (1967); *Brooks v. State,* 3 Md.App. 485, 513, 240 A.2d 114 (1968). The classic instance ... is *Chisley v. State,* 202 Md. 87, 95 A.2d 577 (1953). Chisley had been drinking and was riding home with his father, the father's brother-in-law and the victim. Chisley was sleeping. When the car arrived home, the father got out first, followed by the father's brother-in-law. At that point, the brother-in-law told the father that the father had dropped some cigarettes. This was the onset of trouble. Chisley said the cigarettes were his and the victim said that they were not. The father described what followed that exchange: 'That's all there was to it. He gets out the gun and shot him; there wasn't any argument to it.' A second shot later followed the first shot. Ignoring the very real possibility that the first shot may well have been the fatal one, the Court of Appeals held that the time interval between the two shots was sufficient to permit a finding of deliberation and premeditation."

*Smith v. State, supra,* at 318–19, 398 A.2d 426.

Premeditation may also be established circumstantially from the facts of a particular murder. *See Bieber v. State,* 8 Md.App. 522, 261 A.2d 202 (1970). In *Kier v. State,* 216

Md. 513, 523, 140 A.2d 896 (1958), the Court of Appeals held that the brutality of the murder act may, in and of itself, provide sufficient evidence to convict for first degree murder. The Court stated:

"The brutal manner in which the victim was beaten about the face and head with these or other objects indicates a protracted period during which the assault continued. Then the assailant procured or produced a butcher knife which he plunged into her body not once but twice. There was ample evidence to justify the trial court in its conclusion that the action of the appellant was wilful, that it was deliberate, and that it was premeditated.

The court is irresistibly driven to the conclusion that there was sufficient evidence to justify the trial court in arriving at its verdict of murder in the first degree." *Id.*

In the case *sub judice,* appellant was convicted of the strangulation death of Laverne Duffy. The State established that the deceased had bruises and marks about her neck and the presence of semen in her mouth. In addition, the victim's nude body was dumped in a litter-strewn area of a city park. Even without any other evidence of appellant's mental state, the jury could have concluded, as it apparently did, that within the time it took appellant to strangle the victim to death, appellant achieved the necessary mental state which constituted the crime of first degree premeditated murder. Logic and common sense dictate that for one person to strangle another person to death, a significant length of time must pass for the victim to die. This time period in which the perpetrator must continuously exert sufficient force on the victim's throat to block the victim's breathing affords the perpetrator a significant opportunity for reflection and a change of heart.

Appellant suggests that premeditation was not proven because the act of Laverne Duffy's murder could conceivably have been effected instantaneously and, therefore, without premeditation. Appellant suggests that the evidence presented at trial could allow a jury to conclude that La-

verne Duffy's death resulted from a crushed or collapsed throat. Appellant hypothesizes that a strangulation death could have been the result of a single act performed without the time for reflection or deliberation. There is no factual basis for appellant's claim. The State presented evidence to the jury that Laverne Duffy was strangled to death. The autopsy report admitted into evidence did not reveal that the victim's throat was crushed by her attacker. From the evidence presented at trial, the jury could have found that the strangulation murder of Laverne Duffy could only have been committed in an "appreciable" length of time.

The time period in which the strangulation of Laverne Duffy must have occurred, and the brutality with which the act was committed, were such that a reasonable juror could have concluded that appellant committed the act with premeditation and deliberation. The question of whether the murder of Laverne Duffy resulted from a wilful, deliberate and premeditated act was properly submitted to the jury. *See Chisley v. State, supra.* In reviewing the sufficiency of the evidence to support a criminal conviction by a jury, the proper inquiry is not whether the reviewing court believes the evidence beyond a reasonable doubt. Rather, the proper inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980), *citing Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1974). In the case *sub judice,* a rational jury could have found that appellant was guilty of first degree premeditated murder.

## II

Appellant also assigns as error the trial court's granting of an instruction requested by the State on the nature of strangulation. Appellant concedes that the trial court gave the standard instructions on the elements of first and second degree murder. In the course of his charge to the jury, however, the judge gave the following instruction:

"It is sufficient if there is time for the mind to think upon and consider the act and then determine to do it. Now the interval between the first and final act constituting murder is sufficient evidence of the mental state necessary to establish murder in the first degree. Traditionally, that's like somebody fires five shots, there is an interval between where you could conclude they really intended the act. Now in this case, we have strangulation. You may consider the act constituting the murder is strangulation. The first act to constitute murder is shutting off the victim's air and the final act is the blockage of air and death to the victim. Now applying these definitions of fact to this case, if you find that the State has proven beyond a reasonable doubt that the defendant intentionally killed the deceased and this killing was done with deliberation and premeditation, your verdict should be guilty of murder in the first degree."

During its deliberation, the jury submitted several questions to the trial court. One of these questions was whether strangulation was considered first degree murder. In response, the trial court reinstructed the jury, repeating its original charge and adding that strangulation was not in and of itself first degree murder. The trial court stated that "[i]t is like shooting or stabbing is the manner of killing." The court then reread the instruction on what constitutes first degree murder.

 Appellant argues that the challenged instruction regarding strangulation shifts the burden of proof of premeditation away from the State where it must lie, *see Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and places it on appellant. We disagree. The court specifically stated that strangulation in and of itself does not constitute first degree murder and that the manner of killing was only one circumstance for the jury to consider in reaching its verdict. Within the context of this case, the court merely pointed out that the act of strangulation does not take place immediately but rather spans a continuous period of time or series of continuous acts of choking until

death occurs. We agree with appellant that the trial court's instructions to the jury that murder by strangulation constitutes two separate "acts" is not the most accurate or artful instruction on the subject. In light of the actual evidence in this case, the instruction, if error, is harmless, because no evidence was adduced from which the jury could conclude that death may have resulted from a sudden blow. In fact, the autopsy report refutes any such finding. We disagree, however, that the instruction shifted the burden of proof of the element of premeditation to appellant; clearly, it did not.

In *Robeson v. State,* 39 Md.App. 365, 381, 386 A.2d 795 (1978), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980), this Court held that a jury could have determined beyond a reasonable doubt an intent to kill from the firing of two shots separated by an interval of time. *Id.; see Chisley v. State, supra.* Similarly, in the present case, the jury could have determined beyond a reasonable doubt that appellant made a premeditated decision to commit murder within the interval of time it took him to initiate and then ultimately complete the act of strangulation. The court advised the jury that it might conclude that appellant had the requisite mental state to commit first degree murder in the time period appellant took to complete the act of strangulation. We perceive no error.

## III

Appellant next asserts as error the trial court's refusal to sequester the jury because of publicity regarding Laverne Duffy's murder and appellant's involvement therein. On April 20, 1983, shortly after the onset of appellant's trial in the present case, an article regarding the trial appeared in the *Baltimore Evening Sun.* The article gave a brief summary of the facts surrounding the death of Laverne Duffy and recited that several witnesses had identified the dress found in appellant's car as the dress last worn by Duffy. The article also stated that appellant was under investigation by city and county police for the homicides or questionable deaths of fourteen young black women.

 The general rule applicable in determining whether a claim of possible bias or prejudice based on newspaper articles should be reviewed was stated in *Barber v. State,* 16 Md.App. 235, 239, 295 A.2d 814 (1972), as follows:

> "The burden is upon the party alleging prejudice to show: (1) that the newspaper article is prejudicial; (2) that a juror has read the prejudicial newspaper article; and (3) that the jurors' decision at the trial was influenced by that newspaper article." *Id.* (citations omitted).

Further, it is wholly within the discretion of the trial court whether to order the sequestration of a jury. *See Veney v. Warden,* 259 Md. 437, 271 A.2d 133 (1970); *State v. Magwood,* 290 Md. 615, 432 A.2d 446 (1981).

 In the instant case, the judge had previously admonished the jury not to read any articles dealing with the Duffy murder. Further, when polled by the judge, no juror responded affirmatively to the question of whether any of them had read the challenged article. The judge read the article himself and concluded that it was not prejudicial but, rather, was a fair reflection of testimony which had already been given in the case. As such, it was not an abuse of discretion for the court to refuse appellant's request to sequester the jury.

### IV

 Appellant next attacks the search warrant by which investigators searched appellant's automobile and ultimately recovered Laverne Duffy's dress as well as soil and glass samples which matched those found at the area where Duffy's body was discovered. Appellant asserts that the search was based on an invalid search warrant and, therefore, the fruits of that search must be suppressed. Appellant argues that the affidavit upon which the search warrant was based was invalid under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). At a pre-trial suppression hearing, appellant argues that the affidavit gave the impression that Detective Ozazewski, the affiant, personally interviewed the witnesses who supplied the infor-

mation establishing probable cause that appellant was involved in the Duffy murder. In fact, however, several of the witnesses were interviewed by other officers. Appellant points to other "sins of omission" contained in the affidavit, such as the fact of the initial search of appellant's automobile for weapons and the failure to include dates regarding various information. The trial court denied the motion to suppress, finding that the information contained in the affidavit was not false or misleading. The court stated that the fact that several witnesses were interviewed by police officers other than affiant Detective Ozazewski did not constitute a falsehood and did not affect the veracity of the affidavit in any way. We agree with the trial court.

Appellant's argument is without merit. *Franks v. Delaware, supra,* held that a defendant may challenge the truth of an affiant's information if he can prove a *deliberate falsehood or reckless disregard for the truth. Id.* at 155, 98 S.Ct. at 2676 (emphasis supplied). The affidavit in the instant case contained no false or misleading information; the omissions appellant refers to in the search warrant affidavit in no way affected the veracity of that document. The affidavit and accompanying search warrant clearly established probable cause to search appellant's vehicle, and appellant's challenge to the sufficiency of the warrant is without merit. The evidence in this case was properly admitted.

## V

Lastly, appellant argues that the testimony of the State's witnesses is so contradictory, both internally and in comparison with other testimony, as to lack probative force, and that, therefore, appellant's criminal agency was not proven beyond a reasonable doubt. See *Kucharczyk v. State,* 235 Md. 334, 201 A.2d 683 (1963). We disagree. At most, the discrepancies in the testimony were insignificant.

Appellant specifically refers to discrepancies in witness testimony regarding what Laverne Duffy was wearing on the night she died. Several witnesses described the dress

as a strapless flowered sundress. One witness testified that the sundress had straps. And one witness testified that the dress had an elastic top with the straps tucked under. This discrepancy is meaningless, especially considering that every witness who saw the deceased the night she died and could identify what she was wearing positively identified the dress found in appellant's automobile as the dress last worn by Laverne Duffy.

Also without significance is the slight discrepancy as to the time Laverne Duffy was at various places on the night of July 24–25. The *Kucharczyk* doctrine regarding what constitutes sufficient evidence to take a case to the jury is confined to unresolved contradictions within a single witness' trial testimony as to the central issue of the case. *See Bailey v. State,* 16 Md.App. 83, 95, 294 A.2d 123 (1972).

In the present case, the discrepancies in the testimony of the State's witnesses were entirely insignificant. It is the duty of the trier of fact to weigh the evidence as a whole and resolve any conflicts in testimony. *See Barnes v. State,* 31 Md.App. 25, 28–29, 354 A.2d 499 (1976). The evidence was sufficient for the jury to conclude that appellant committed the murder of Laverne Duffy.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.