DECISION
Before this Court for decision is a timely motion for new trial filed by defendant Clyde Gillespie following a trial by jury that resulted in his January 13, 2006 convictions for domestic murder in the second degree by strangulation and failure to report the death of his wife, Betty Sue Gillespie. He premises his motion on alleged errors of law committed by this Court at trial and argues further that the jury's verdict is not supported by the evidence. The State has objected to the defendant's motion. For the reasons set forth in this Decision, this Court denies the defendant's motion for new trial in its entirety.
 FACTS AND TRAVEL
The indictment in this case charges that the defendant, Clyde Gillespie, on a day and dates between June 1, 1998 and November 24, 1998 did: (1) murder Betty Sue Gillespie, in violation of R.I. Gen. Laws §§ 11-23-1, 12-29-2 and 12-29-5 (Count I); and (2) failed to report her death with the intention of concealing a crime, in violation of R.I. Gen. Laws § 23-4-7.[1] At trial, the State contended that around the dates in question, the defendant strangled his wife, Betty Sue Gillespie, and then hid her body in the attic of their apartment where it remained undiscovered for months until his eviction.
The evidence at trial disclosed that on November 24, 1998, the police were called to the apartment in question when workers readying the rental unit for letting to a new tenant followed a powerful stench to a locked attic closet where they discovered what appeared to be a body wrapped in bedding and curtains from the apartment that had been tied with a knot. Further investigation revealed that the defendant and his wife were the last tenants to occupy the apartment.
The police found the defendant on that same day and he agreed to speak informally with the police, not knowing at that time that they had found the body. The defendant initially denied having seen his wife for a couple of months. He confirmed that he had recently been evicted from the apartment at issue.
Upon more formal questioning by the police at the station, after having been advised of his Miranda rights but again before he was told about the discovery of the body, he stated that he had an argument with his wife in July (during which she implied that he was having an affair) and that she had walked out around July 16, 1998. He said that he did not know where she was, that she had done this before and that she usually stays in a shelter. He admitted to telling Betty Sue's mother thereafter that he did not know the whereabouts of his wife. As would become clear in his later statements, however, he knew exactly where she was — dead in the attic where he had hidden her body.
At trial, Estelle Woods, Betty Sue Gillespie's sister, testified that she last saw her sister in mid-September, 1998. She knew that her sister used drugs, but she said that on that date, she looked fine. When three or four weeks then elapsed without Ms. Woods or her mother having seen Betty Sue again, she made periodic checks of a local soup kitchen frequented by the defendant in an effort to locate her sister. The defendant told her on one occasion during this time period — again when he would have known she had died and was stuffed in the attic — that Betty Sue had left and gone to a shelter and on other occasions that he had not seen or heard from her.
When asked by the police about how Betty Sue could support herself, the defendant said that she was collecting SSI payments that were deposited directly into her credit union account. He admitted to using her ATM card to withdraw money from her account and attempted to explain that she did not need the money because she was in a shelter (when, in fact, she was dead). Bank records and photographs from the teller machine at the credit union introduced by the State at trial, however, showed the defendant making a series of withdrawals from his wife's account throughout the month of October, 1998, at a time when he would have known that she was dead.
The defendant further told the police about a calendar on which he had crossed off the dates since she "left." The police later found a calendar in a dumpster outside the apartment and it showed days checked off beginning with September 16, 1998 and running through the rest of the month of September. He also described the apartment for the police and said that he had put a lock on the door to the attic because he owned expensive suits that he did not want stolen. A later search of his new apartment showed no suits and no women's clothing. The defendant denied noticing any smell in the apartment at the time he resided there.
The police later took the defendant to the apartment in question, which he identified as the apartment that he had vacated within the last couple of days. He denied being able to smell the pungent stench of a decomposing body. As the police approached the door to the attic crawl space, the defendant continued to deny being able to smell the overwhelming odor. He identified the attic closet, with the padlocked door where they found the body, as the place where he had kept his suits.
Back again at the station, the police informed the defendant that they had found a body in the attic and confronted him about his professed inability to smell the stench in the apartment. He then broke down and admitted that he could smell the body and that it was his wife in the crawl space. In an effort to explain how she died and why her body was hidden in the attic, the defendant said that he had woken up one morning and found her dead in bed. Being afraid, he bundled her up and put her in the attic. He said that he and Betty Sue had been at home together that night in their apartment and that she had been smoking crack. He made no mention of any untoward events that could have resulted in injury to her prior to death.
In the defendant's written statement to the police that followed, he confirmed that the body found by the police in his old apartment was his wife, Betty Sue Gillespie. He said that he had found her dead in his bed around July 16, 1998 (though the calendar and other evidence suggested September 16, 1998). He had noticed blood coming from her nose and mouth at that time. He said he panicked because "I have nine and a half years hanging on me [referring to the length of his earlier imposed suspended sentence and probation on unrelated charges] and I was scared the police were going to blame me. I wrapped her up and put her in the closet."
The defendant stated further that he had wrapped her up in sheets from the bed and a pink blanket, tying the material in a knot like a shoe lace. He then put her in the closet and pushed her into the attic and padlocked the closet door so no one would find her. He admitted that the body began to smell and that he would tell people it was the trap under the sink. He stated that he was going to put her in the dumpster (because she started to smell really bad and he had to move out of the apartment), but when he tried to pull her out, the wrappings started to rip. He had a big garbage bag to put her in but he could not stand the smell so he just pushed her back inside the closet. He claimed that he knew the date Betty Sue died because he was keeping a calendar and checking off the days since she died because he knew he would get caught.[2]
The State's chief witness was Rhode Island's Chief Medical Examiner at the time, Dr. Elizabeth Laposata, who identified the body as that of Betty Sue Gillespie and opined, to a reasonable degree of scientific certainty, that she had died by manual strangulation. She based her opinion on her finding of a broken hyoid bone — a classic marker of death by strangulation — and her observation of hemorrhaging around it that suggested to her that the break had occurred shortly before death.
At trial, the defendant did not testify or present any evidence. This Court denied the defendant's motion for judgment of acquittal, made pursuant to Rule 29 of the Rhode Island Rules of Criminal Procedure at the conclusion of the State's case, finding that the evidence, when viewed in a light most favorable to the State and without regard to weight or credibility, could support the defendant's conviction on both charges beyond a reasonable doubt.
This Court charged the jury on the law of first degree murder. It also charged the jury on the lesser included offense of second degree murder. The State did not request an instruction on the law of second degree murder but it likewise did not object to this Court giving that instruction. The defense objected to this Court giving a second degree murder instruction on the grounds that the death by strangulation, if found by the jury to have occurred and to have been committed at the hands of the defendant, would be a crime of first but not second degree murder. This Court nonetheless determined that the evidence could support a verdict of second degree murder and thus instructed the jury on the law applicable to this lesser included offense.
The jury rendered its verdict on January 13, 2006. It acquitted the defendant on the charge of first degree murder and convicted him on the lesser included charge of second degree murder, pursuant to R.I. Gen. Laws § 11-23-1. It also convicted him of failure to report a death with the intention of concealing a crime, in violation of R.I. Gen. Laws § 23-4-7.
On January 23, 2006, the defendant filed his timely motion for a new trial pursuant to Rule 33 of the Rhode Island Rules of Criminal Procedure. The State objected. Both parties presented oral argument and filed legal memoranda.
In support of his motion for a new trial, the defendant contends first that this Court erred as a matter of law in submitting the case to the jury on the lesser included offense of second degree murder and in its instructions to the jury on the law of second degree murder. He next argues that, even if this Court did not commit those assigned legal errors, the evidence presented at trial, when independently assigned appropriate credibility and weighed by the Court, cannot support the defendant's convictions for second degree murder and failure to report a death.
The State opposes the defendant's motion for a new trial. It argues that this Court did not err in its legal instructions to the jury and that the evidence was more than sufficient for the jury to convict the defendant of second degree murder.
This Court has reviewed the evidence at trial and the applicable law, together with the parties' legal memoranda and oral arguments, and now issues this written decision on the defendant's motion for a new trial. The defendant, through counsel, has waived his right to be advised of this Decision in open court. This Court, also with the consent of the parties, has held the defendant's motion to set bail in abeyance pending this Decision, to be considered at the time of sentencing or a subsequent hearing.
 STANDARD OF REVIEW
Under Rule 33 of the Rhode Island Rules of Criminal Procedure, "the court may grant a new trial to the defendant if required in the interest of justice." A new trial may be ordered "for error of law occurring at trial." Committee Notes for 2002 Amendment;see also Compiler's Notes to Rule 33 (noting that the amendment to Rule 33 eliminated the prior prohibition on granting a new trial for error of law occurring at the trial). A new trial for legal error occurring at trial cannot be granted, however, if the error was harmless. See Committee Notes for 2002 Amendment;see also R.I. Super. Ct. R. Civ. P. 61 ("error . . . by court [at trial not] ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action appears to the court as inconsistent with substantial justice"). A new trial also may be ordered if the jury's verdict is "against the fair preponderance of the evidence and fails to do substantial justice." State v. D'Alessio, 848 A.2d 1118, 1126 (R.I. 2004) (quoting State v. Dyer, 813 A.2d 71, 75 (R.I. 2003)). In ruling on such a new trial motion, the trial justice acts as a "thirteenth juror" and considers the evidence at trial in light of its charge to the jury, exercising its independent judgment as to the credibility of the witnesses and the weight of the evidence. Id. (citing State v. Jackson, 752 A.2d 5, 12 (R.I. 2000) (quoting State v. Banach, 648 A.2d 1363, 1367 (R.I. 1994)). If the court, based on its individual assessment of the evidence and its charge to the jury, agrees with the jury's verdict or if it determines that reasonable jurors could come to a different conclusion, then it may deny the new trial motion.Id. (citing Dyer, 813 A.2d at 75)). On the other hand, if the court disagrees with the jury's verdict and the verdict is against the fair preponderance of the evidence and fails to do substantial justice, then the trial justice may grant the defendant a new trial. Id. "Once a trial justice has evaluated the evidence and articulated the reasons for denying a new trial, [the appellate court] will not disturb that decision unless [the trial justice] `overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong.'" State v. Sosa, 839 A.2d 519, 529 (R.I. 2003) (citing State v. Bleau, 668 A.2d 642, 646 (R.I. 1995) (quotingBanach, 648 A.2d at 1367)).
 ANALYSIS DEFENDANT'S CLAIMS OF LEGAL ERROR AT TRIAL
The defendant contends that this Court committed legal error at trial by submitting the case to the jury on the lesser included offense of second degree murder. He suggests that this Court should have limited its murder instructions to a charge of first degree murder. Defendant describes the defining element of first degree murder as premeditation that is "more than momentary" whereas he suggests that the premeditation required for second degree murder is "less than momentary." Def.'s Mem. at 3. He thus contends that because the act of strangulation, as testified to by the uncontradicted testimony of Dr. Laposata, requires concerted pressure to the neck for 3 to 5 minutes, the evidence only could have supported a finding of premeditation that was more than momentary, making it murder, if murder at all, in the first degree.
The defendant argues, alternatively, that even if this Court were correct in submitting the case to the jury on both the charge of first degree murder and also the lesser included offense of second degree murder, it nonetheless committed error of law in its instructions to the jury on the crime of second degree murder by failing to instruct that premeditation is an element of second degree murder. According to the defense, there is an element of premeditation in both first and second degree murder, but the difference is only in the length of the premeditation; in first degree murder, premeditation is "more than momentary," whereas in second degree murder, the premeditation "need only be momentary". Def.'s Mem. at 8. Admitting that the Supreme Court, in State v. Prescott,70 R.I. 403, 419-420, 440 A.2d 712, 728-730 (R.I. 1944), has characterized as harmless error a second degree murder instruction that did not include premeditation as an element of the crime, the defendant insists that the error of excluding the element in this case was not harmless. Def.'s Mem. at 9.
The State asks this Court to deny defendant's motion for a new trial, to the extent it is premised on grounds of legal error, as the Court properly instructed the jury on the lesser included offense of second degree murder. It argues that the Court did not err in giving such an instruction, even though the State did not request that charge and the defense objected to it, because the evidence supported the giving of the charge. To buttress this argument, the State cites to numerous Rhode Island cases involving alleged strangulation, as well as cases from other jurisdictions, where the jury was given second degree murder instructions either alone or in combination with instructions on first degree murder. It contends that the defense has offered no case law to support its argument that a charge of murder by strangulation, by definition, only can support a first degree murder charge. Moreover, citing State v. Bingham,105 Wash. 820, 828, 719 P.2d 109, 114 (Wash. 1986) and Dupree v. State,615 So.2d 713, 718 n. 1 (Fla.Dist.Ct.App. 1993), the State contends that courts have held that a second degree murder instruction alone suffices in a strangulation case.
To address the defendant's claims of legal error occurring at trial on which he premises, in part, his motion for a new trial, this Court must begin with an analysis of the law of murder in the State of Rhode Island. This analysis requires consideration of the murder statute and the case law in this jurisdiction, as well as in other jurisdictions, pertinent to defining the crimes of first and second degree murder and the distinction between the two.
 The Law of Murder in Rhode Island Rhode Island's Murder Statute
Rhode Island's murder statute states as follows:
 The unlawful killing of a human being with malice aforethought is murder. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing, or committed in the perpetration of, or attempt to perpetrate, any arson or any violation of 11-4-2, 11-4-3, or 11-4-4, rape, any degree of sexual assault or child molestation, burglary or breaking and entering, robbery, kidnapping, or committed during the course of the perpetration, or attempted perpetration, of felony manufacture, sale, delivery, or other distribution of a controlled substance otherwise prohibited by the provisions of chapter 28 of title 21, or while resisting arrest by, or under arrest of, any state trooper or police officer in the performance of his or her duty or committed against an assistant attorney general or special assistant attorney general in the performance of his or her duty, or perpetrated from a premeditated design unlawfully and maliciously to the effect the death of any human being other than him or her who is killed, is murder in the first degree. Any other murder is murder in the second degree. The degree of murder may be charged in the indictment or information, and the jury may find the degree of murder, whether the murder is charged in the indictment or information or not, or may find the defendant guilty of a lesser offense than that charged in the indictment or information, in accordance with the provisions of 12-17-14.
R.I. Gen. Laws 1956 § 11-23-1, as amended by P.L. 1990, ch. 284, § 4 (emphasis added). This statute does not change the crime of murder from what it was at common law. See State v. Pine,524 A.2d 1104, 1107 (R.I. 1987); State v. Hathaway, 52 R.I. 492,501-02, 161 A. 366, 369 (R.I. 1932); State v. Fenik,45 R.I. 309, 314, 121 A. 218, 221 (R.I. 1923).[3] It merely establishes two degrees of murder, depending upon the circumstances under which the crime is proven to have been committed, with a different penalty for each offense. Id.
The problem with this archaic statute, however, is that it does not define, with cogent particularity, the difference between first and second degree murder or the distinct elements of the two offenses. While it suggests that all murder requires proof of "malice aforethought" and that murder in the first degree, as distinguished from murder in the second degree, requires proof of a killing that is "willful," "malicious," "deliberate" and "premeditated" (or otherwise is a crime of felony murder or other killing defined statutorily as murder in the first degree), it does not define any of those terms.
These kinds of statutory deficiencies in Rhode Island's criminal code as a whole, and its murder statute in particular, have helped this state earn the dubious distinction of having one of the five worst criminal codes in the country. See Paul H. Robinson, Michael T. Cahill Usman Mohammad, The Five Worst(And Five Best) American Criminal Codes, 95 Nw. U.L. Rev. 1, 61 (2000).[4] Indeed, these authors criticize Rhode Island's criminal code for not containing general definition sections or definitions for specific terms that it uses in defining offenses.Id. at 27. They criticize it as well for its frequent use of "confusing, convoluted or arcane language in setting out offenses." Id. at 29.
As an example of these serious statutory deficiencies, the authors quote Rhode Island's murder statute in its entirety.Id. at 29-30. They then ask:
 Who could seriously believe that this effectively communicates the rules of conduct to citizens, or to lawyers, for that matter?
Id. at 30. They observe that it is unclear from the language of that statute "[h]ow [a] willful, deliberate, malicious and premeditated killing constitutes a discrete subset of killing with malice aforethought." Id. They further highlight the fact that our murder statute describes first degree murder in a single sentence containing 165 words. Id. The authors characterize that attempt to define the crime of first degree murder as "a maze designed for a lab rat." Id.
It is with this maze that this Court has had to wrestle in this case. The lack of clarity in the murder statute of our criminal code has spawned some inconsistency in the verbiage of the decisions of the Rhode Island Supreme Court in articulating the elements of first and second degree murder. It likewise has spawned inconsistencies in the instructions our trial justices have given juries on the crimes of first and second degree murder and the circumstances under which the trial courts have charged on lesser included offenses. This Court, when preparing to instruct the jury on the law of first and second degree murder in this case, ran headlong into the issues created by our archaic criminal code, including inconsistencies in the case law and the parties' disagreements as to the law on which to charge. Those issues became crystallized in this case because of the limited evidence of the circumstances surrounding the defendant's commission of the crime.
In an effort to bring these issues into greater focus, this Court will attempt to parse the language of our murder statute and to analyze the relevant judicial precedents of the Rhode Island Supreme Court. Defining the elements of the crimes of first and second degree murder is an essential predicate to addressing the defendant's claims that this Court committed legal error in instructing the jury on the lesser included offense of second degree murder and the law applicable to that offense.
 First Degree Murder
The Rhode Island murder statute defines all murder, presumably murder in both the first and the second degree, as "the unlawful killing of a human being with malice aforethought." R.I. Gen. Laws § 11-23-1 (1956). As noted previously, the statute does not define the term "malice aforethought" nor does it explain how a "willful, malicious, deliberate and premeditated" killing is only one type of murder done with "malice aforethought." The Rhode Island Supreme Court, however, has defined the term "malice aforethought" as synonymous with malice, whether express or implied, requiring proof of malice as a required element of both first and second degree murder. State v. Mattatall,603 A.2d 1098, 1105 (R.I. 1992) (citing State v. McGranahan,415 A.2d 1298, 1302 (R.I. 1980); Fenik, 45 R.I. at 314, 121 A. at 221). "Malice aforethought" generally is defined as a catchall phrase for the various mental states needed for first and second degree murder, such as intent to kill or intent to cause great bodily harm. 2 Charles E. Torcia, Wharton's Criminal Law 246-247 (15th ed. 1994); see State v. Parkhurst, 706 A.2d 412,421 (R.I. 1998); McGranahan, 415 A.2d at 1302-03.
The Rhode Island murder statute distinguishes first degree murder as a subset of murders committed with malice that are willful, deliberate, and premeditated. "Willfulness," though listed statutorily as a requirement of first degree murder and not defined, is generally not considered a separate element of first degree murder and is usually regarded as synonymous with intent. Wharton's Criminal Law at 251.[5]
"Premeditation," though also not defined in the statute, is understood to mean possessing thoughts about killing before one actually performs the act; whereas "deliberation," likewise not defined by the statute, is considered the process of contrasting those thoughts with the consequences of doing the act. Wharton'sCriminal Law at 259, 260. Deliberation is present if one weighs the decision to kill while possessing a "cool mental state."Id. at 261. As this Court instructed the jury in this case, at the defendant's request and without objection by the State:
 perhaps the best that can be said of deliberation is that it requires a cool mind that is capable of reflection and of premeditation that it requires that the one with the cool mind did in fact reflect.
State v. Diaz, 654 A.2d 1195, 1201 (R.I. 1995) (quoting LaFave Scott, Criminal Law § 7.7(a) at 642-43 (2d ed. 1986)).
 Second Degree Murder
Under Rhode Island's murder statute, the crime of second degree murder is not defined explicitly but instead is captured by the catchall language of the murder statute that states, after defining first degree murder, that "[a]ny other murder is murder in the second degree." R.I. Gen. Laws § 11-23-1 (1956). When these statutory provisions regarding first and second degree murder are read together, they suggest that any malicious killing that does not satisfy the elements of first degree murder is second degree murder. Id. Because murder in general is defined as "the unlawful killing of a human being with malice aforethought" and first degree murder, by the terms of the statute, requires proof of deliberation and premeditation, it necessarily follows that any act done with malice, but not with premeditation and deliberation, is murder in the second degree. Id. Thus the only required element of second degree murder is malice — which is the only element required of both first and second degree murder.Mattatall, 603 A.2d at 1105.
 Deliberation is an Element of First Degree Murder
According to our statute and the common law, therefore, the crime of first degree murder, unlike the crime of second degree murder, requires proof beyond a reasonable doubt of a killing done with: (1) premeditation; and (2) deliberation. Despite the existence of these two separate elements of the crime of first degree murder, however, the overall trend in Rhode Island case law has been to consolidate both of these elements into a single, undefined element called "premeditation," focusing on the aspect of the timing of the formation of the intent to kill vis á vis the killing itself. See State v. Clark, 423 A.2d 1151, 1161
(R.I. 1981) (". . . we have always stressed that the determinative factor differentiating first-degree from second-degree murder is the time lag between the formation of the homicidal intent and the killing itself").[6]
For first degree murder, the intent to kill must have existed for "more than a barely appreciable period of time" and have had "something more than a momentary existence." Fenik,45 R.I. at 315, 121 A. at 221. Yet the rationale for the length of time of the premeditation, as articulated in Fenik, is to ensure that there was sufficient time not only to form the intent to kill but to do so with deliberation. Id. After all, the crime of first degree murder is defined in our statute by analogy to killing by poison or lying in wait — examples of acts of killing that are indisputably done with premeditation and deliberation. Id.
("From the fact that the premeditation and deliberation accompanying the killing which constitutes murder in the first degree is connected in the same clause with the intention referred to in cases of poisoning and lying in wait, we think the premeditation necessary to establish the first degree of murder must be shown to have existed for . . . something more than a momentary existence."); R.I. Gen. Laws § 11-23-1 (1956) ("Every murder perpetrated by poison or lying in wait, or any other kind of willful, malicious, deliberate and premeditated killing . . . is murder in the first degree.")
Yet the required element of deliberation in the crime of first degree murder is often not mentioned in the case law.[7]
Even when the element of deliberation is mentioned, it is often noted only in reciting the statute.[8] Moreover, even when deliberation is mentioned as an element of first degree murder, it is not defined. See State v. Grabowski, 644 A.2d 1282,1285 (1994) (the most that is said is that "[m]urder in the first degree requires proof of premeditation of more than a momentary duration and proof of deliberation, whereas second degree murder does not").[9]
A review of precedent shows, therefore, that the element of deliberation, even when mentioned in passing as an element of first degree murder, appears to have been swallowed by the term "premeditation" — the element where our courts have focused their attention time and again. Once swallowed, it then all but disappears. This lack of attention, or definition, however, does not convince this Court that deliberation is not an element of first degree murder. Our statute and case law, rooted in the common law, show that the element of deliberation cannot be ignored and should be articulated and defined when instructing our juries on the crime of first degree murder.[10]
 Premeditation is Not an Element of Second Degree Murder
To further confuse matters, the absence of premeditation in the statutory definition of second degree murder has not kept the term out of second degree murder analysis in the courts of this state. Granted, when the term is used, courts refer to premeditation in second degree murder as "momentary premeditation," as opposed to the "longer premeditation" required for first degree murder. See State v. Saccoccio, 50 R.I. 356,361, 147 A. 878, 880 (R.I. 1929) ("In the Fenik case we said that the distinction between first and second degree murder lay in the extent of premeditation . . .").
Defendant's citation to State v. Prescott, 70 R.I. 403,40 A.2d 721 (R.I. 1944), is helpful in showing how our courts have vacillated on the issue. In that case, the defendant argued, as in this case, that the second degree murder instructions given to the jury by the trial court erroneously omitted the element of premeditation. Prescott, 70 R.I. at 417-418,40 A.2d at 728.[11] The court in Prescott agreed, but concluded that the error did not prejudice the defendant. Id. at 729. The court's discussion of premeditation is telling:
 We have examined those cases [on premeditation] and it is not clear in some of them just what the statute involved requires; in other cases the court seems to say quite clearly that premeditation is not necessary to murder in the second degree. We have not cited those cases here because we are satisfied that there is nothing in our statute which would warrant the statement that murder in the second degree is "where there is no premeditation."
Id. at 728-729. Thus the court in Prescott made a somewhat exasperated decision about whether premeditation is an element of second degree murder, perhaps mindful of the statements in precedent that had come before it, absent any analysis of case law or statutory language. A return to Fenik, however, might have advanced the interpretation of second degree murder beyond "where there is no premeditation."
A close review of State v. Fenik, 121 A. 218 (1923), the seminal Rhode Island case regarding the elements of the common law crime of murder, shows that "premeditation," as that term has been used inaptly in defining the crime of second degree murder, is used in intent to kill murder prosecutions to indicate more precisely, and plainly, the state of mind evidencing an intent to kill formulated prior to the act of murder itself. In Fenik,
the defendant was convicted of first degree murder after mounting an insanity defense. On appeal, he argued that the trial court erred in failing to instruct on the law of second degree murder. The prosecution argued that the defendant should either be found guilty of first degree murder or not guilty by reason of insanity. The court outlined the difference between first and second degree murder:
 At common law the conscious design or intent need not have been entertained for any considerable period prior to the act of killing; it was sufficient to make the offence murder if the intent was formed and existed for any length of time, however short, prior to the killing. From the fact that the premeditation and deliberation accompanying the act of killing which constitutes murder in the first degree is connected in the same clause with the intention referred to in cases of poisoning and lying in wait, we think the premeditation necessary to establish the first degree of murder must be shown to have existed for more than a barely appreciable length of time before the killing; that is it must have had something more than a momentary existence.
State v. Fenik, 45 R.I. at 314-15, 121 A. at 221 (emphasis added). The court in Fenik stated that a charge of second degree murder was appropriate because "it may be fairly argued that there is evidence of vacillation and an absence of any settled purpose for any but a very brief period of time before the killing." Taken as a whole, Fenik shows that having a "settled purpose" or intent to kill can make the act murder. Having an intent to kill that exists for "something more than a momentary existence" can show the element of premeditation required for first degree murder, as it then is a sufficient enough amount of time for a defendant to have not only premeditated but also deliberated.
Several cases note this distinction. Recently, in State v.Vorgvongsa, 692 A.2d 1194, 1196 (R.I. 1997), the Rhode Island Supreme Court, returning to Fenik, stated that the distinction between first and second degree murder is that murder in the first degree requires premeditation. It defined premeditation as "requiring the formation of an intent to kill for a period more than momentarily prior to the killing itself." 692 A.2d at 1196;see also State v. Brown, 898 A.2d 69, 84-85 (R.I. 2006).
In Parkhurst, 706 A.2d 412 (1998), the trial court was precise initially in leaving out the term "premeditation" in its definition of second degree murder by instructing that "premeditation and deliberation are not elements of murder in the second degree." 706 A.2d at 421. The trial court then went on to instruct, however, that "the distinction between first and second degree murder is the length of time of the premeditation. If it's for more than of momentary duration, it's murder in the first degree. If it's less than of momentary duration, however brief, its [sic] murder in the second degree." Id. at 422.
On review, the Rhode Island Supreme Court, as in Prescott,
held that these various instructions on second degree murder were not so confusing as to warrant a reversal of a first degree murder conviction, but stated that the difference between first and second degree murder was that, "Murder in the first degree requires the state to prove beyond a reasonable doubt a premeditated intent to kill of more than a momentary duration in the mind of the accused, whereas if the formation of the intent to kill is merely momentary, then the offense is murder in the second degree." Id. (citing Grabowski, 644 A.2d at 1285);see also Clark, 423 A.2d at 1161 ("If that intent is more than momentary, the murder is first degree; if the intent had a momentary existence, a finding of murder in the second degree is warranted.") Addressing the trial court's instructions on second degree murder specifically, the Supreme Court said "the language of the trial justice is unfortunate in that the phrase `less than of momentary duration' is not a meaningful definition of the formation of intent. It would be preferable to say that the formation of intent of momentary duration, as suggested inFenik, is sufficient to meet the requirement of second-degree murder." Parkhurst, 706 A.2d at 422 n. 4.
Also in Parkhurst, the Supreme Court attempted to outline the different theories under which the State could prove an offense of second degree murder. In reference to the required element of malice aforethought, the Supreme Court wrote that "A prosecutor may establish this element of second degree murder by three means: (1) showing a premeditated intent to kill in the mind of the accused for a very brief time before the killing, (2) proving the defendant's conscious disregard for the possibility of death or great bodily harm, or (3) establishing that the defendant committed a homicide in the perpetration of an inherently dangerous felony not enumerated as a first degree murder felony."Id. at 421.
These cases convince this Court that premeditation is not a required element of second degree murder; what is required in a second degree intent to kill murder prosecution (as opposed to one based on the defendant's conscious disregard for the possibility of death or great bodily harm or a homicide committed during the perpetration of an inherently dangerous felony not enumerated as a first degree murder felony), is proof of an intent to kill that existed in the mind of the accused for at least a moment prior to the act of killing. In contrast, first degree murder requires proof of premeditation and deliberation, that is to say an intent to kill that existed in the mind of the accused for "something more than a momentary existence" or for a long enough period of time, however short, to contrast his or her thoughts about killing with the consequences of doing the act. As formulated by the Supreme Court in Diaz, 654 A.2d at 1201, "perhaps the best that can be said of deliberation is that it requires a cool mind that is capable of reflection and of premeditation that it requires that the one with the cool mind did in fact reflect."
 This Court's Instructions on Second Degree Murder Comported with the Law
At trial, this Court instructed the jury on the law of first and second degree murder. With regard to first degree murder, this Court instructed the jury, in pertinent part, as follows:
 In order to convict the defendant of first degree murder, the State must prove, beyond a reasonable doubt that the defendant, Clyde Gillespie, killed Betty Sue Gillespie by manual strangulation and that he did so willfully, deliberately, maliciously and with premeditation. An act is done willfully if it is done voluntarily and intentionally and not by mistake or accident. The terms "deliberate" and "voluntarily" are actions resulting from the defendant's prior consideration of the act of killing itself. Such a prior consideration, however, must have existed in the mind of the defendant for more than simply a moment's duration. In other words, a defendant must have deliberated and already fixed in his mind for more than a mere moment an intention to kill before the killing occurred. Perhaps the best that can be said of deliberation is that it requires a cool mind that is capable of reflection and of premeditation that it requires that one with a cool mind did in fact reflect for more than a moment before the killing.
In instructing on second degree murder, this Court stated:
 Our law also recognizes murder in the second degree as a lesser included offense to the charge of murder. To prove the defendant guilty of murder in the second degree, the State must prove beyond a reasonable doubt that he killed Betty Sue Gillespie by manual strangulation and that he did so intentionally and maliciously. Unlike first degree murder, however, second degree murder does not require the State to prove beyond a reasonable doubt that the defendant killed with premeditation and deliberation. If a person's conscious intent or design to kill existed only momentarily or fleetingly, or if you are not convinced beyond a reasonable doubt that it existed for more than a mere moment and was the product of deliberation, it is second degree murder. On the other hand, if such a conscious design or intent existed for more than a mere moment and was the product of deliberation, then the crime rises to the level of first degree murder.
As to both first and second degree murder, this Court further instructed the jury that proof of malice is required, stating that "malice may be express or implied [and] can arise from either an intent to kill or to inflict great bodily harm."
In conclusion, this Court charged the jury as follows:
 In this case, therefore, if the State satisfied you beyond a reasonable doubt that the defendant, Clyde Gillespie, killed Betty Sue Gillespie between the dates of June 1, 1998 and November 24, 1998, by manual strangulation and that he did so intentionally and maliciously and with deliberation and premeditation, then you may return a verdict of guilty on the charge of first degree murder.
 If you find that the State failed to prove beyond a reasonable doubt that such a killing was premeditated or deliberate, but you nonetheless determine that Clyde Gillespie intentionally killed Betty Sue Gillespie, then you may return a verdict of guilty on the lesser included offense of second degree murder. But it you find that the State has failed to convince you beyond a reasonable doubt that Betty Sue Gillespie died of manual strangulation, or that the defendant killed her by strangling her intentionally and maliciously, you must return a verdict of not guilty as to both the offenses of first and second degree murder.
In this Court's view, its charge comports with the law as outlined in this Decision. When read in its entirety, it makes clear the distinction between first and second degree murder in an intent to kill murder prosecution such as this case. The fact that this Court omitted the term premeditation in defining second degree murder is not error because the term is absent from the statutory definition of second degree murder and is unnecessary when supplanted by the requirement that the State prove a conscious intent to kill of at least momentary duration. Indeed, this Court's instructions comport with the language of recent Rhode Island Supreme Court decisions that make it clear that premeditation is the distinguishing element between first and second degree murder and that it is defined as the formation of an intent to kill for a period more than momentarily prior to the killing itself. See Brown, 898 A.2d at 84-85; Vorgvongsa,692 A.2d at 1196 (citing Amazeen, 526 A.2d at 1271; Meyer,115 R.I. at 591, 350 A.2d at 615; and Fenik, 45 R.I. at 315,121 A. at 221). Moreover, even assuming, for purposes of argument, that this Court should have used the term premeditation when defining the law of second degree murder, it is harmless error for this Court not to have done so when the charge is considered as a whole. See Vorgvongsa, 692 A.2d at 1196;Prescott, 70 R.I. at 419-420, 440 A.2d at 728-730.
 The Evidence Supported an Instruction on Second Degree Murder
The defendant next argues that the evidence did not support an instruction on second degree murder. The defense sought to position this case as one where the jury would be forced to choose between first degree murder and an acquittal. It was hopeful, perhaps given the limited evidence surrounding the circumstances of the commission of the crime, that the jury would acquit the defendant of all charges (or perhaps the court would grant a motion for judgment of acquittal or overturn any conviction should the jury not acquit). The State likewise did not request a second degree murder instruction, obviously desirous of increasing the odds that a jury would convict the defendant of first degree murder.
The trial court, however, is not constrained in its charge by the instructions on the law requested by the parties. The court is duty bound to give the jury the legal instructions on any lesser included offenses supported by the evidence. See R.I. Gen Laws § 8-2-38 (in every jury trial, the trial justice "shall instruct the jury in the law relating to the action); State v.Goff, 107 R.I. 331, 335-336, 267 A.2d 686, 688 (R.I. 1970) (defendant not entitled to charge on lower degree of homicide when evidence did not sustain such a finding; however, where evidence would suggest such a verdict, an instruction thereon must be given even if not requested). A second degree murder charge is appropriate, therefore, when it is properly supported by evidence. State v. Brown, 744 A.2d 831, 838 (R.I. 2000) ("It is well settled that a criminal defendant is `entitled — and the trial justice is required — to instruct the jury on a lesser included offense when the evidence supports a possible verdict on a lesser included offense.' However, `an instruction is not necessary when such a charge is wholly unsupported by the evidence.'") (citations omitted); Parkhurst,706 A.2d at 421-422 ("In certain circumstances, all three theories of second-degree murder and a theory of first degree murder may be supported by the evidence and thus properly submitted to the jury.") (citations omitted).
The Rhode Island Supreme Court has outlined the purpose behind this precedent:
 As a matter of practice, we require that a lesser included offense instruction be given when warranted on account of the danger that, absent such an instruction, a jury may erroneously convict a criminal defendant of the principal offense charged, despite the prosecution's inability to prove an element of that offense, when the jury is convinced that the defendant's conduct was criminal.
State v. Hockenhull, 525 A.2d 926, 930 (R.I. 1987) (faulting the trial court for not giving intermediate instruction). The Supreme Court in Hockenhull quoted Justice Brennan's decision in Keeble v. United States, 412 U.S. 205, 212-13 (1973), in which he wrote:
 It is no answer to petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction — in this context or any other — precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.
Id.
Although this Court could find no Rhode Island case where the issue of the propriety of instructing on the law of second degree murder in a strangulation case had been raised, there are strangulation cases where the trial courts in Rhode Island have instructed on second degree murder. Juries then have convicted defendants of second degree murder and the Supreme Court has affirmed.[12]
In addition, other jurisdictions that distinguish first degree murder from second degree murder on the basis of premeditation and deliberation have deemed second degree murder instructions appropriate in strangulation cases. See Crespin v. People,721 P.2d 688, 692 (Colo. 1986) (the court stated that a second degree murder instruction would be appropriate on remand when the evidence established that the defendant knowingly committed the act and was aware that his actions would result in the victim's death); State v. Bingham, 105 Wash. 2d 820, 828, 719 P.2d 109,114 (Wash. 1986) (the mere act of strangulation only can support an instruction for second degree murder). Ironically, a split in authority concerns not whether courts may instruct on second degree murder in strangulation cases but whether evidence of strangulation, without more, is sufficient to warrant an instruction on first degree murder, with a second degree murder instruction in such circumstances being a given. CompareBingham, 105 Wash. 2d at 828, 719 P.2d at 114 (act of strangulation alone cannot establish premeditation and deliberation requirements of first degree murder) withHounshell v. State, 61 Md. App. 364, 372, 486 A.2d 789, 793
(Md.Ct.App. 1985) (question of whether the time it takes to produce death by strangulation is sufficient for a defendant to reflect on his or her actions before death ensues is a jury question).
Despite precedent supporting second degree murder instructions in strangulation cases, the defendant argues that the instruction was error in this case. Defendant's argument appears to rest primarily on the assumption that the act of strangulation, by definition, must include premeditation (and deliberation) and therefore satisfies the elements for first degree murder. The defense focuses on the testimony of the Medical Examiner in this case to show the minutes required to strangle someone to death and argues that this time period, by definition, constitutes premeditation or an intent to kill longer than just a moment that establishes first degree murder as opposed to second degree murder. Because he claims that premeditation (or as he describes it, the "length of premeditation") is the difference between first and second degree murder, and because one cannot strangle another in an instant, defendant argues that the evidence shows that the defendant had an intent to kill, if at all, for more than a moment and that the crime charged thus falls outside the scope of second degree murder.
The defendant's argument is based on a flawed concept of first degree murder and is tantamount to arguing that the jury is required to find, as a matter of law, that if the defendant strangled Betty Sue Gillespie, he did so with premeditation and deliberation. As discussed previously, in addition to the element of malice which is required for both first and second degree murder, there are two other elements required to prove first degree murder: premeditation and deliberation. This Court specifically instructed the jury that if it had any doubt as to either element, then it could consider the offense of second degree murder.
Defendant only addresses premeditation. Even if premeditation, as defined by the defense as an intent to kill in existence for longer than a moment, were the only defining element of first degree murder, the defendant's argument rests on the erroneous assumption that strangulation, by definition, automatically fulfills the premeditation requirement. Defendant cites no case to support the notion that the mere passage of time connected with the act of strangulation is enough to show that a defendant acted with premeditation, as opposed to indicating potentially the opportunity to premeditate. See Bingham,105 Wash. 2d at 824-25, 719 P.2d at 112-13. Given the limited evidence of the circumstances surrounding the act of strangulation in this case, the jury could have had reasonable doubt as to the length of time that defendant harbored an intent to kill that could not be satisfied based solely on the Medical Examiner's testimony as to the length of time it takes to kill by strangulation. The jurors might not have been convinced, beyond a reasonable doubt, based on the evidence and this Court's charge, that the defendant formed an intent to kill that existed in his mind "for more than a mere moment" before the killing or that the defendant "with a cool mind did in fact reflect for more than a moment before the killing."
Alternatively, though not addressed by the defendant, the jurors might have had reasonable doubt as to deliberation. As is true with its arguments as to premeditation, the defense cites no authority for the proposition that the mere passage of time connected with strangulation is sufficient to show that a defendant deliberated. See id. The jurors might not have been convinced, beyond a reasonable doubt, particularly given the absence of any direct evidence of the defendant's state of mind at the time of the killing, that, as this Court charged, the defendant engaged in "prior consideration of the act of killing itself" with "a cool mind that is capable of reflection" and that he "with a cool mind did in fact reflect for more than a moment before the killing." The jury could have decided that although the defendant had two to five minutes to formulate an intent to kill and reflect on what he was doing, the State may not have proven that his intent to kill was premeditated (or more than momentary) and/or the product of deliberation.
It is helpful to go outside Rhode Island case law to explore this intersection between the evidence and the law of first and second degree murder as it applies to a killing by strangulation. In State v. Bingham, the Washington State Supreme Court held that an aggravated first degree murder conviction could not stand in a strangulation case because the act of strangulation alone was insufficient to satisfy the element of premeditation as required in the state murder statute. Bingham,105 Wash. 2d at 828, 719 P.2d at 114 (Wash. 1986);[13] see alsoHounshell v. State, 61 Md. App. at 372, 486 A.2d at 793
("[D]eath by strangulation does not in and of itself establish first degree murder . . . Whether the time required to produce death by strangulation is sufficient for the assailant to reflect upon his actions before death ensues is a matter for the jury to determine.").[14] In Bingham, the defendant was accused of strangling a mentally challenged adult while sexually assaulting her. Bingham, 105 Wash. 2d at 821, 719 P.2d at 110. Very similar to this case, the prosecution relied on pathology testimony indicating that manual strangulation took three to five minutes, enough time for the defendant to weigh the decision to take the life of his victim. Id. at 111. After receiving instructions for first and second degree murder as well as first degree manslaughter, the jury convicted Bingham of aggravated first degree murder. Upon review however, the Washington Court of Appeals reversed the conviction for want of evidence of premeditation. Id. The Washington State Supreme Court affirmed, stating:
 We agree with the Court of Appeals majority that to allow a finding of premeditation only because the act takes an appreciable amount of time obliterates the distinction between first and second degree murder. Having the opportunity to deliberate is not evidence the defendant did deliberate, which is necessary for a finding of premeditation. Otherwise, any form of killing which took more than a moment could result in a finding of premeditation, without some additional evidence showing reflection.
Id. at 113.
Indeed this Court reviewed and relied upon Bingham in advance of instructing the jury on second degree murder (although neither party in this case brought that decision to this Court's attention) and continues to believe that its precepts are instructive in this case. Just because the defendant had theopportunity to premeditate and/or deliberate, does not mean that the defendant actually did so. As the court in Hounshell
made clear, that question is one for the jury. Hounshell,
61 Md. App. At 372, 486 A.2d at 793. It necessarily follows that if there is a question about whether the defendant premeditated or deliberated, whether based on the evidence or the lack of evidence, then an instruction on second degree murder is appropriate.
Only when there is overwhelming evidence supporting premeditation or deliberation has our Supreme Court sanctioned a decision by the trial court to instruct only on first degree murder. In the recent case of State v. Brown,898 A.2d at 84-85, for example, the Supreme Court upheld a trial court decision not to instruct on second degree murder. In that case, the defendant sexually assaulted the victim, then stabbed her multiple times and finally strangled her with a telephone cord before leaving her to slowly die.
In the earlier case of State v. Brown, 744 A.2d 831, 839
(2000), the court held that the defendant was not entitled to a lesser charge of second degree murder when evidence of a prolonged attack on the victim demonstrated "more than momentary resolve." In that case, the defendant conspired with another person to carry out a prolonged brutal attack on the victim. Evidence indicated defensive bruises on the victim, indicating a protracted struggle. A trail of blood and clothes indicated that the victim tried repeatedly to get away from the defendant. Id.
This evidence showed that the defendant had more than one opportunity to stop his attack, but did not.
In Sosa, 839 A.2d at 527, the court held that there was no reversible error when the trial court declined to instruct on second degree murder. In that case, the defendant was in an altercation with the victim three days before the killing. Id.
at 526. In addition, the defendant had twice threatened the victim and stated "I'm going to get you", and the defendant scaled a fence with gun in hand pursing the victim. Id at 527. The defendant "demonstrated sustained determination" supporting the elements of premeditation and deliberation.
In Campbell, 691 A.2d at 572, the court likewise held that the trial judge properly refused to instruct on second degree murder. There, the defendant stabbed the victim multiple times and then strangled her with a lamp cord.
It must be noted, however, that these cases do not stand for the proposition that had the trial court instructed on second degree murder, it would have been error. On the contrary, a first degree murder instruction alone is insufficient when the evidence, or lack of evidence, shows that premeditation or deliberation could be in question.
In Hathaway, 52 R.I. at 501, 161 A. at 369, for example, the trial court gave both first and second degree murder instructions in a strangulation case. The evidence in that case is similar to the evidence presented here. In that case, the defendant was the only person with the victim when the victim died, the defendant changed his story as to the circumstances surrounding the killing, and the defendant attempted to evade the police by fleeing and disguising himself. In this case, the defendant was the only person with Betty Sue Gillespie when she died. The defendant initially told the police that he did not know where his wife was, but eventually confessed that this statement was untrue. Like Hathaway, the defendant tried to evade the police by hiding his wife's body. The limited evidence surrounding the act of killing itself calls for a second degree murder instruction because there is no overwhelming evidence of premeditation and deliberation. Unlike the first degree murder cases cited above, there was no evidence in this case of defensive bruises on the victim or evidence of a struggle. There is no indication that the defendant stopped the attack and resumed it again at a later point. There is no evidence that the defendant took multiple steps in the killing, showing repeated opportunity to consider his actions like the defendant inBrown. 744 A.2d at 839.
Accordingly, this Court believed at the time of trial, and continues to believe now, that it was proper to instruct the jury on the law of second degree murder. In that way, this Court provided the jury with all of the possible tools that it may have needed to decide this case — tools that this Court itself would have wanted available to it had it tried this case without benefit of a jury.
In addition, while the defense argues that the State is barred from arguing that it was not error for the Court to give a second degree instruction because the State did not request such an instruction at trial, the defendant has presented no persuasive authority for such a position.[15] The State here did not request that the jury be instructed on second degree murder — it simply did not object to this Court giving that instruction. As such, the prosecution has not taken any inconsistent position regarding the propriety of this Court's decision to charge as it did. By objecting to the defendant's motion for a new trial, the State is simply endorsing the position taken by this Court at trial — a decision that this Court was free to make then and is free now to affirm, with or without the consent of the parties.
In this Court's view, it would have been more improper to limit the jury to a choice between a first degree murder conviction or an acquittal. While the defense may suggest that giving a second degree murder charge led to a compromise verdict of a conviction of second degree murder, this Court is of the view that the verdict was not a compromise at all, but, as will be further explained in the course of addressing the defendant's more conventional arguments in support of his motion for a new trial, actually lead to an intelligent verdict based on the evidence. Had the jury not been given that option, it would have been left to decide between convicting the defendant of murder in the first degree or acquitting the defendant. While such a choice might have helped the defendant tactically, by potentially increasing the chances of an acquittal of first degree murder, it also could have led to an unjust result in the form of an acquittal by default or a conviction for a crime that this jury obviously did not believe was proven beyond a reasonable doubt.
For all of these reasons, this Court is of the view that it was not only appropriate to instruct on second degree murder and that its instructions on the law were appropriate proper, but that it would have been error not to so instruct the jury based on the evidence in this case. To the extent the defendant's motion for a new trial is premised on claimed errors of law, therefore, it is denied.
 The Evidence Supports a Conviction of Second Degree Murder
As for the more conventional aspect of defendant's motion for a new trial by which he argues that the evidence is insufficient to support the defendant's conviction for second degree murder, this Court is called upon to review the evidence, giving it the weight and credibility that it independently deems is appropriate. SeeD'Alessio, 848 A.2d at 1126. Viewed in that light, this Court finds that the evidence was sufficient to support this defendant's conviction of second degree murder and failure to report a death, as defined in its charge, beyond a reasonable doubt.
The State's expert witness, Dr. Elizabeth Laposata, testified credibly that the cause of Betty Sue Gillespie's death was manual strangulation, resulting in a broken hyoid bone shortly before death. This evidence, coupled with the evidence that the defendant admitted to being with his wife when she died, observed blood coming out of her nose and mouth, chose not to call for help for her or report her death, hid her body in a locked attic closet marked off the days since her death because he knew he would get caught, took money belonging to his wife out of her ATM account after she died, and lied to family members and the police about the victim's whereabouts and his knowledge of her death, supports the conclusion, beyond a reasonable doubt, that the defendant strangled Betty Sue Gillespie to death, that he did so with an intent to kill of at least momentary duration and malice and that he hid her body and failed to report her death with the intention of concealing his crime.
The evidence at trial disclosed that the decomposing body of Betty Sue Gillespie was discovered on November 14, 1998 in the locked attic crawl space of an apartment occupied previously by the defendant and his wife and from which the defendant had just been evicted. A cleaning crew readying the apartment for the next tenant had been greeted with a strong odor that led them to a padlocked door to the attic. They suspected a dead body in the attic and thus called the police. The police battled the stench and found what appeared to be a body wrapped in bedding in the crawl space so they contacted the Medical Examiner's office. Their investigation into the whereabouts of the tenants who had just vacated the apartment led them to defendant Clyde Gillespie.
At trial, Dr. Laposata opined, to a reasonable degree of scientific certainty, that Betty Sue Gillespie died of manual strangulation. She based her opinion, in part, on evidence that the victim had sustained a fracture of the hyoid bone in her neck — a classic marker of death by manual strangulation. She noted that the hyoid bone is a particularly difficult bone to break, thereby ruling out an accidental fracture or fracture resulting from moving the body. A hyoid bone, according to her testimony, fractures only when pinpoint pressure is applied directly to that bone in that difficult to reach area of the neck, as one typically would expect with manual strangulation.
She also based her opinion on evidence of hemorrhaging that she observed grossly in the area of the fracture (which she said led her to discover the fracture in the first instance) and that also was noted microscopically. While she acknowledged that the report associated with the microscopic examination noted findings "`possibly' consistent with gross examination of the neck," she explained that the word "possibly" meant that the slide observation alone could at most create a possibility of hemorrhaging consistent with manual strangulation that then was confirmed as consistent with her gross observations and the hyoid bone fracture and its location. She opined further that she could exclude consideration of the microscopic findings entirely and that it would not alter her opinion as to the cause of death. Dr. Laposata further opined that while the hemorrhaging she observed could occur from the blood pooling in a given location from the position of the body, her observations of the tissue surrounding the fracture did not show pooling generally in the tissue in that area and beyond; instead, she saw pooling exclusively in the area of the fracture, in contrast with the absence of pooling in the tissues that she analyzed on the other unbroken side of the hyoid bone.
Dr. Laposata also opined, to a reasonable degree of scientific certainty, that the hyoid bone fracture was a pre-mortem injury that occurred shortly before death. She based this conclusion on her observation of hemorrhaging around the broken hyoid bone and the fact that she observed no evidence that the fracture had begun to heal as one would expect to see within as little as three hours after the break.
Dr. Laposata acknowledged that other causes of death were possible, including such things as a drug overdose, suicide, improper CPR, heart disturbances, viral causes, or a brain tumor. She noted that the victim did have alcohol and cocaine in her body at the time of death (not unsuspected initially but confirmed by a final toxicology report received after she determined the cause of death), admitted that death can result from the ingestion of such substances and acknowledged that she did not investigate the possibility of damage to the heart from substance abuse. Yet, she ruled out these other causes, to a reasonable degree of scientific certainty, based on her scientific findings supporting manual strangulation and the absence of any medical history of the victim or other autopsy findings that would suggest natural disease or such other causes of death. She explained that the state of decomposition of the body precluded her from making additional findings typically associated with manual strangulation, including peticulae in the eyes and/or bruises or scratches on the neck.
According to Dr. Laposata, pressure must be applied for a not insignificant period of time to cause death by strangulation — approximately five to ten seconds before a person loses consciousness, an additional generally minutes to cause brain damage and another minute to cause irreparable brain damage and death. She ultimately assisted in the positive identification of the body as Betty Sue Gillespie based on the victim's prior medical records and prior injuries consistent with her autopsy findings.
In considering the defendant's motion for a new trial, this Court affords the testimony of Dr. Laposata full weight and credibility. There is no question that this case lacks additional evidence of strangulation that might otherwise have existed had the body been found without months elapsing after death and had more circumstances surrounding the death been known, but the absence of additional findings usually consistent with manual strangulation, the notation that the microscopic findings are "possibly" consistent with hemorrhaging, the presence of cocaine and alcohol in the victim's body and the possibility of other causes of death do not in this Court's mind raise reasonable doubt as to Dr. Laposata's opinion of death by manual strangulation, with the broken hyoid bone occurring near in time to death, especially when that opinion testimony is considered with the other evidence in this case.
Moreover, her opinion testimony must be considered not in a vacuum but together with the other evidence at trial. As previously noted, the evidence shows that the defendant admitted to being with his wife when she died, observed blood coming out of her nose and mouth (which certainly could be consistent with death by strangulation), chose not to call for help for her or report her death, hid her body in a locked attic closet marked off the days since her death because he knew he would get caught, took money belonging to his wife out of her ATM account after she died, and lied to family members and the police about the victim's whereabouts and his knowledge of her death.
While the defendant attempted to suggest in his written statement that Betty Sue died from a drug overdose or some other unknown cause, the jury was well within its rights to reject that suggestion. Such a theory is inconsistent with the fact that his wife suffered a broken hyoid bone near in time to her death (which the defendant never attempts to explain in his statements to the police and would not have known he needed to explain at that time). In addition, the defendant fails to explain how he knew Betty Sue Gillespie was dead in bed when he awoke if he did not know she had died. The defendant said in his earlier statement to the police that he and Betty Sue had a fight just before she "left" which could imply that they had a fight just before she died, as he later admitted that she did not leave but she died. The defendant's actions in not calling for help for her and instead concealing her body and lying about it demonstrate guilty knowledge. He understandably did not want to get caught, not because he thought he could be sentenced potentially as a violator to over nine years in prison for a death that he did not cause, but because he was guilty of murder and failing to report Betty Sue's death with the intention of concealing his crime.
Accordingly, this Court is convinced, as was the jury in this case, that the evidence was of sufficient weight and credibility to prove, beyond a reasonable doubt, that the defendant intentionally and maliciously strangled his wife to death with his hands, a crime of domestic murder in the second degree in violation of R.I. Gen. Laws §§ 11-23-1, 12-29-2 and 12-29-5, and failed to report her death with the intent to conceal his crime, in violation of R.I. Gen. Laws § 23-4-7. This Court thus denies the defendant's motion for a new trial, to the extent premised on grounds that it is not supported by the evidence and fails to do substantial justice.
 CONCLUSION
For all of the reasons stated in this Decision, this Court denies the defendant's motion for a new trial in its entirety.
[1] The indictment also charges the defendant, in Count 3, with carrying on his person a concealed weapon, namely a knife with a blade over 3 inches in length, in violation of R.I. Gen. Laws §11-47-42. By agreement of the parties, the Court severed this count prior to the trial, reserving it for later disposition.
[2] Following a pre-trial suppression hearing, this Court denied the defendant's motion to suppress his oral and written statements to the police that are referenced in this Decision.
[3] See Ernest G. Mayo, Rhode Island's Reception of theCommon Law, 31 Suffolk U.L. Rev. 609 (1998).
[4] Using a scale of one to five, these authors rated the criminal codes in all of the states in various categories to determine how functional the codes were in terms of "rule articulation" (defining the conduct that is prohibited or required by the criminal law so as to educate the public as to what conduct must be avoided or performed upon pain of criminal sanction) and "rule adjudication" (providing guidance to lawyers and judges for assessing criminal liability). Id. at 3-6. In the category of "Comprehensiveness and Accessibility of the Principles of Adjudication," a category which includes defining culpability requirements, Rhode Island received a zero, which the authors translate to "useless." Id. at 38.
In addition to faulting the aforementioned murder provisions of Rhode Island's criminal code in this regard, the authors also fault states such as ours that have "an `unconstrained' felony-murder rule, i.e., a rule imposing liability for murder for any death that results during the commission of any felony, regardless of the intention of the `murderer'" or a misdemeanor manslaughter rule that arguably does the same with regard to murders resulting from the commission of any misdemeanor. Id.
at 48-50.
[5] Consistent with this view, this Court charged the jury in this case that willfulness means voluntarily and intentionally and not because of mistake or accident.
[6] Even the instructions given to the jury in Clark by the trial justice confirm this view:
 If there is malice, premeditation and the intention to kill in the mind of the person doing the killing for more than an appreciable length of time, not simply momentary, then it is murder in the first degree. If that malice, premeditation and intention to kill exists in the killer's mind for only a barely appreciable time — seconds, less than momentary — then the killing cannot in law be murder in the first degree, but is instead, murder in the second degree. The difference, again, the distinction between the two, is the time, the length of the existence of malice, premeditation and intent to kill in the mind of the killer prior to the killing.
Clark, 423 A.2d at 1161.
[7] See Clark, 423 A.2d at 1161; see also State v.Myers, 115 R.I. 583, 591, 350 A.2d 611, 615 (R.I. 1976); Statev. Page, 104 R.I. 323, 333-334, 244 A.2d 258, 263-264 (1968);State v. Crough, 89 R.I. 338, 353, 152 A. 2d 644, 652 (R.I. 1959); Prescott, 70 R.I. at 419, 40 A.2d at 729; State v.Saccoccio, 50 R.I. 356, 360-62, 147 A. 878, 880 (R.I. 1929).
[8] See Parkhurst, 706 A.2d at 421; State v. Amazeen,526 A.2d 1268, 1271 (R.I. 1987); Prescott, 70 R.I. at 418,40 A.2d at 729; Fenik, 45 R.I. at 313-314, 121 A. at 221.
[9] See also Sosa, 839 A.2d at 527 (R.I. 2003) (quoting Grabowski, 644 A.2d at 1286); State v. Brown, 744 A.2d 831, 838
(R.I. 2000) (quoting Grabowski, 644 A.2d at 1286); State v.Campbell, 691 A.2d 564, 571 (R.I. 1997) (quoting Grabowski,644 A.2d at 1286).
[10] Even if premeditation is the only term used, it should be defined as including the two separate concepts of premeditation and deliberation with each of those terms defined. See p. 14-15, supra, and n. 13, infra. Query whether the failure to include deliberation as an element of first degree murder and to define it allows a jury to convict a defendant of first degree murder when all that has been found by the jury would establish only second degree murder?
[11] The trial court's instructions stated: "Murder in the second degree is where there is no premeditation or deliberation, or else if there were premeditation or deliberation, it existed in the mind of the accused for only a barely appreciable length of time." Prescott, 40 A. 2d at 728.
[12] See State v. Houde, 596 A.2d 330, 332 (R.I. 1991) (second degree murder conviction for killing by strangulation with ligature); State v. Boucher, 542 A.2d 236, 237 (R.I. 1988) (second degree murder conviction for killing by strangulation); State v. Diaz, 521 A.2d at 130 (second degree murder conviction where victim "had died of strangulation — specifically, from a fracture of the hyoid bone in her neck); State v. Conway,463 A.2d 1319, 1326 (R.I. 1983) (second degree murder conviction where, though beating occurred as well "the actual cause of death was asphyxia due to strangulation" and the mechanism of death [was] . . . the inhibition of the vagus nerve caused by a fracture of the hyoid bone); State v. Leonardo, 375 A.2d 1288,1388-90 (R.I. 1977) (in second degree murder conviction, where "the cause of death . . . was strangulation," the court noted, in passing upon an argument of the defendant that "the jury had acquitted the defendant of first degree murder [because] . . . it found that no premeditation or conscious design existed for more than a moment before the killing"); State v. Danehey,274 A.2d 736, 736-38 (R.I. 1971) (second degree murder conviction of husband where death of wife was caused by strangulation with "a man's necktie wound securely around [her] neck").
The State collected the preceding cases in its memorandum filed with this Court. See State's Mem. in Supp. of its Obj. to Def't's Mot. For a New Trial at 2-3. The State also mistakenly cited State v. Ferola, 534 A.2d 173, 174 (R.I. 1987), among these Rhode Island cases even though the jury in that case convicted the defendant of first and not second degree murder for killing by strangulation. Yet, Ferola is instructive, as the Rhode Island Supreme Court, in affirming the conviction in that case, explicitly noted its approval of the second degree murder instruction given by the trial justice. Id. at 175.
[13] Unlike Rhode Island, there is no separate element of deliberation needed for first degree murder in the state of Washington. Premeditation includes the act of deliberating. The statute states, "Premeditated means thought over before-hand. When a person, after any deliberation, forms an intent to take human life, the killing may follow immediately after the formation of the settled purpose and it will still be premeditation." WPIC 26.01.01; see also State v. Brooks,97 Wash.2d 873, 876 (1982). Premeditation is "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." Brooks,97 Wash. 2d at 876.
[14] The law of Maryland is parallel to that in Rhode Island, as it defines a first degree murder as any deliberate, premeditated and willful killing and all other murders as murder in the second degree. See Md. Code Ann., §§ 2-201(a) and 2-204 (a).
[15] The defendant cites to Kenneth M. Miller, Feature:Combating the Prosecutor's Improper Utilization of InconsistentTheories, The Champion (June 2002), a publication of the National Association of Criminal Defense Lawyers, Inc., in a vain attempt to support his argument in this regard. That article, however, provides no support for the defendant's position. The thesis of the article is that prosecutors often take inconsistent positions at co-defendants' separate trials to gain a tactical advantage. The author refers to such a practice as a form of gamesmanship designed to change the outcome of a separate case based on false evidence that is a violation of a defendant's due process rights. Yet, the case at hand has nothing to do with the prosecution of co-defendants at separate trials and hence the article is irrelevant.